COURT OF APPEALS
DECISION
DATED AND FILED

November 4, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP996-FT**

STATE OF WISCONSIN

Cir. Ct. No. 2017ME246

IN COURT OF APPEALS
DISTRICT II

IN THE MATTER OF THE MENTAL COMMITMENT OF I.R.T.:

WAUKESHA COUNTY,

    PETITIONER-RESPONDENT,

  V.

I.R.T.,

    RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Waukesha County: LLOYD V. CARTER, Judge. *Affirmed*.

¶1    REILLY, P.J.[1] I.R.T. appeals from an order of the circuit court extending his involuntary commitment. I.R.T. argues that Waukesha County (the County) failed to establish that he is dangerous pursuant to WIS. STAT. § 51.20(1)(a), (am), and that the circuit court's recommitment order erroneously relied on hearsay evidence. We conclude that the evidence supports the circuit court's conclusion that I.R.T. is mentally ill, is a proper subject for treatment, and would be a proper subject for commitment if treatment were withdrawn. *See* § 51.20(1)(a)1.-2., (am). Accordingly, we affirm.

## BACKGROUND

¶2    I.R.T. was first subject to an emergency detention and involuntary commitment and involuntary medication and treatment orders in 2017. These orders have since been renewed. On September 19, 2019, the County filed for an extension of I.R.T.'s commitment. The circuit court scheduled a hearing and appointed doctors to examine I.R.T. I.R.T. did not respond to the examiners' attempts to contact him, and they were forced to complete their evaluations based on the available records.

¶3    I.R.T. also did not appear at the hearing on October 8, 2019. The circuit court issued a capias, finding good cause to continue the hearing due to I.R.T.'s failure to appear, and tolled the expiration of the commitment order. On November 4, 2019, I.R.T. was taken into custody, and the recommitment hearing was held on November 5, 2019. At that time, the circuit court offered I.R.T. the

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version.

option to adjourn the hearing to allow the examiners to evaluate him in person, but he declined.

¶4 The County called three witnesses to testify: Danielle Weber, a clinical therapist with Waukesha County Health and Human Services; Dr. Rada Malinovic, M.D., a staff psychiatrist at the Waukesha County Mental Health Center; and Dr. Peder Piering, Psy.D., the examining psychologist. The County introduced all of the experts' reports into evidence. The testimony revealed that I.R.T was homeless, going by an alias, and had not complied with any conditions of his treatment order since April 2019. Each expert recommended an extension of the orders.

¶5 I.R.T. did not present witnesses to rebut the experts' testimony, but he did elect to testify on his own behalf. When asked why he did not want to take medication, his response was rambling and hard to follow:

> Because I'm a strong believer and—I feel like—I take medication. Don't know 100 percent if I'm right or wrong—It hurts my feelings the way I feel—I felt kind of lost. Even this kind of upset, and it never should have. It's really painful. I don't know anyone who even—that really basically puts any medications like that. And to be viewed as good, that's wrong, especially if you don't have 100 percent. But just—That's why. And to call someone and—calls back—or whatever or maybe father says it, then maybe he should be. If he don't say it—Talk a little slower—something else. That is wrong.

When asked to clarify his statement, I.R.T. again had difficulty expressing his thoughts, explaining that "I think it's wrong to put someone on medication for being spiritual, for things that you don't have 100 percent true or tell the truth" and that it was "wrong" to "tell me if I'm mentally able or mentally ill, no man should call another person mentally ill if they don't have 100 percent proof." He went on:

> You guys know the system. I don't handle it the right way.
> So obviously, I'm doing some things right. And obviously,

it's for a loser. So when I do wear all white, it is for the right reasons, which would remind me that's what I was expecting out of the judge sometimes. Now that I know—spiritually. Speak in God's name. That's all I have to say.

¶6    The circuit court found that the evidence was clear and convincing that I.R.T. met the statutory requirements for extending the orders, granted the County's request, and entered orders for a one-year extension of involuntary commitment and involuntary medication and treatment.[2]  I.R.T. appeals.

*Standard of Review*

¶7    Involuntary commitments are governed by WIS. STAT. § 51.20.  To involuntarily commit a person, the county has the burden to prove by clear and convincing evidence that the person is (1) mentally ill, (2) a proper subject for treatment, and (3) dangerous.  *See* § 51.20(1)(a)1.-2., (13)(e); *Langlade County v. D.J.W.*, 2020 WI 41, ¶¶23, 29, 391 Wis. 2d 231, 942 N.W.2d 277; *Fond du Lac County v. Helen E.F.*, 2012 WI 50, ¶20, 340 Wis. 2d 500, 814 N.W.2d 179.  The circuit court may extend the individual's commitment for up to one year. Sec. 51.20(13)(g)1.; *D.J.W.*, 391 Wis. 2d 231, ¶31.  These same standards apply where the county seeks to extend the commitment, except it may satisfy the showing of dangerousness by demonstrating "that there is a substantial likelihood, based on the subject individual's treatment record, that the individual would be a proper subject for commitment if treatment were withdrawn."  Sec. 51.20(1)(am); *D.J.W.*, 391 Wis. 2d 231, ¶32.

---

[2] I.R.T. does not challenge or make any specific arguments regarding the order for involuntary medication and treatment on appeal.  We will address it no further.

¶8    WISCONSIN STAT. § 51.20(1)(am) recognizes that "an individual's behavior might change while receiving treatment" and, accordingly, "provides a different avenue for proving dangerousness if the individual has been the subject of treatment for mental illness immediately prior to commencement of the extension proceedings," as the individual "may not have exhibited any recent overt acts or omissions demonstrating dangerousness because the treatment ameliorated such behavior." *Portage County v. J.W.K.*, 2019 WI 54, ¶19, 386 Wis. 2d 672, 927 N.W.2d 509. In that way, § 51.20(1)(am) is an "alternative evidentiary path, reflecting a change in circumstances occasioned by an individual's commitment and treatment." *J.W.K.*, 386 Wis. 2d 672, ¶19. "However, dangerousness remains an element to be proven to support both the initial commitment and any extension." *Id.*; *see also D.J.W.*, 391 Wis. 2d 231, ¶34.

¶9    We review an extension order as a mixed question of fact and law. *D.J.W.*, 391 Wis. 2d 231, ¶24. We will uphold the court's findings of fact unless clearly erroneous. *Id.* Whether the facts in the record satisfy the statutory standard for recommitment, however, is a question of law that this court reviews de novo. *Id.*, ¶25.

*Hearsay*

¶10    I.R.T. first argues that the circuit court's recommitment order erroneously relied on hearsay evidence. I.R.T. indicates that all the witnesses at the hearing testified to facts that they had no personal knowledge of; specifically, they described the events that led to I.R.T.'s initial commitment, and Weber

5

testified about information from I.R.T.'s parents regarding his condition in 2019.[3] According to I.R.T., pursuant to *S.Y. v. Eau Claire County*, 156 Wis. 2d 317, 457 N.W. 2d 326 (Ct App. 1990), "an examining doctor is permitted to rely on inadmissible hearsay in forming his opinion, but the underlying hearsay is still inadmissible." We disagree that the circuit court relied on inadmissible hearsay.

¶11     Under WIS. STAT. § 907.03, an expert may rely on otherwise inadmissible evidence, such as hearsay, if the evidence is of the type experts typically rely on to form opinions. Looking to the statutes, WIS. STAT. § 51.20(1)(am) provides that the determination of whether an individual would be a proper subject for commitment if treatment were withdrawn is based on a review of the individual's treatment records, and § 51.20(9)(a)5. provides examiners the authority to review the individual's treatment records to formulate his or her opinions. *See also Walworth County v. Therese B.*, 2003 WI App 223, ¶¶8, 17, 19-22, 267 Wis. 2d 310, 671 N.W.2d 377; *Walworth Cnty. DHHS v. M.M.L.*, No. 2014AP2845, unpublished slip op. ¶¶15-18 (WI App July 15, 2015).

¶12     I.R.T. only specifically discusses Piering's testimony, arguing that Piering "only met briefly with [I.R.T.] in 2018, so he did not have first-hand knowledge about the [events leading to I.R.T.'s initial commitment]." Piering testified that he reached his opinion as to whether I.R.T.'s commitment should be extended based on a review of the records, including "records of staff" and his own prior evaluations in 2017 and 2018, as well as his personal observations based

---

[3] I.R.T. acknowledges that trial counsel failed to object to this testimony at the hearing, but he argues that under *State v. Jorgensen*, 2008 WI 60, ¶1, 310 Wis. 2d 138, 754 N.W.2d 77, we may review the issue for plain error affecting his substantial rights. In the interest of finality, we will address this issue briefly.

6

on his meeting with I.R.T. in 2018. I.R.T does not argue that the records reviewed by Piering, or any of the experts, were not proper records under WIS. STAT. § 907.03, and, in fact, Piering testified that this was "the type of information usually relied on in the field for this type of evaluation." Piering was asked to provide the basis for his opinion that an extension of I.R.T.'s commitment was appropriate, and he responded with general statements regarding I.R.T.'s past behavior, which were supplemented by statements in his written report entered into evidence. We do not agree, therefore, that these statements were offered for the truth of the matter asserted, *see* WIS. STAT. § 908.01(3), but were offered only to demonstrate the basis for his opinion. Further, in reaching its conclusion to extend I.R.T.'s commitment, the circuit court did not rely on the underlying hearsay facts; instead, it relied on the opinion testimony of Piering as to I.R.T.'s dangerousness. *See* WIS. STAT. § 907.04. There was no error.[4]

### Involuntary Commitment

¶13    I.R.T. next argues that there was insufficient evidence for the circuit court to make a finding that he is dangerous.[5] Although I.R.T. argued at the

---

[4] Although I.R.T. briefly mentions Weber's testimony regarding the report from I.R.T.'s parents, he fails to develop this argument. Regardless, for similar reasons to those discussed above, we conclude Weber was able to rely on the parents' statements regarding I.R.T.'s condition in 2019 in support of her opinion as to I.R.T.'s decompensation and that the orders should be extended.

[5] As an initial matter, I.R.T. faults the County and the circuit court for failing to specify "which dangerousness prong it was attempting to prove." I.R.T. acknowledges, however, that WIS. STAT. § 51.20(1)(a)2.b. or d. are "two potentially applicable prongs." In ***Langlade County v. D.J.W.***, 2020 WI 41, ¶¶40-41, 391 Wis. 2d 231, 942 N.W.2d 277, our supreme court clarified that "going forward circuit courts in recommitment proceedings are to make specific factual findings with reference to the subdivision paragraph of § 51.20(1)(a)2. on which the recommitment is based." We have said previously, however, that the "going forward" language precludes retroactive application to decisions of the circuit courts prior to ***D.J.W.***'s release. *See* ***Winnebago County v. S.H.***, 2020 WI App 46, ¶14, 393 Wis. 2d 511, 947 N.W.2d 761.

hearing that the County did not have "100 percent proof" that he was mentally ill and stated that he was being medicated for "being spiritual," on appeal, I.R.T. does not appear to contest the circuit court's findings that he is mentally ill and is a proper subject for treatment. *See* WIS. STAT. § 51.20(1)(a)1. I.R.T. only challenges the finding that he is dangerous.

¶14 The testimony received at the hearing was as follows. Weber testified that she began overseeing I.R.T.'s case in May 2018 to monitor his treatment compliance. She explained that I.R.T. had not been in compliance since April 2019: he had not taken medications, worked with outpatient prescribers, or notified the County of his address or location. According to Weber, I.R.T. stopped complying after his parole ended in an unrelated criminal case and he left his group home. Weber's report also explained that I.R.T.'s adoptive parents reported that he was "experiencing increased paranoia, including thoughts that he is being poisoned, and he acknowledged to them that he has been hearing voices."

¶15 Malinovic testified that she met with I.R.T. briefly on the morning of the hearing, "[a]nd in [her] brief interaction with [I.R.T], he's quite—he was somewhat agitated, he was hyperverbal, he was delusional." Malinovic further noted that "attempts" were made to discuss the advantages and disadvantages of and alternatives to medication with I.R.T., but Malinovic "couldn't get a word in," and I.R.T. said, "[W]hy are you putting me on a medication for being spiritual. I don't forgive people who inject me with medications." Malinovic opined that I.R.T was incapable of expressing an understanding of the advantages and disadvantages of and alternatives to medication, and that it "would … be necessary to have a medication[] order," presumably because I.R.T. would refuse

to take the medication without the order.[6]  In her report, Malinovic explained that I.R.T. had "been off of medications for many months" and opined that I.R.T. "needs to be re-stabilized" for "[a]t least 2 weeks, likely longer."

¶16     Piering testified that he was "unable to meet with [I.R.T.] as … [I.R.T.'s] whereabouts were unknown."  His report, then, was based on a record review.  Piering had also completed a report for I.R.T. in 2017 and 2018, and he "actually spoke with [I.R.T.] in 2018."  Piering opined "to a reasonable degree of professional certainty" that I.R.T. suffers from a treatable mental illness—bipolar disorder[7]—and that he is a proper subject for treatment and  requires medication management.  He explained that the symptoms of I.R.T.'s illness include "a history of psychotic symptoms including paranoia, auditory hallucinations, command hallucinations, delusional thinking, some threatening behavior, and difficulty monitoring his mood."  When asked for the basis of his opinion that I.R.T. would be a proper subject for commitment if treatment were withdrawn, Piering generally referenced I.R.T.'s "longstanding psychiatric history," "history of noncompliance," "history of psychotic symptoms[,] and threatening behaviors toward others."  His written report provided more detail for the basis of his opinion, indicating that I.R.T.

---

[6] Although I.R.T. does not challenge the order for involuntary medication and treatment on appeal, we note that Piering also testified that he did provide the required explanations about medications to I.R.T. in 2018, and he believes I.R.T. is substantially incapable of applying an understanding of the advantages, disadvantages, and alternatives to medication in order to make an informed choice. *See Outagamie County v. Melanie L.*, 2013 WI 67, ¶¶53-54, 349 Wis. 2d 148, 833 N.W.2d 607; WIS. STAT. § 51.61(1)(g)4.

[7] Piering testified that I.R.T. suffers from bipolar disorder, but also mentioned a diagnosis of schizoaffective disorder in his report.  Malinovic also testified that I.R.T. "historically has carried a diagnosis of schizoaffective disorder."

was reportedly terrorizing one of the staff member[s] and actively hallucinating, talking about God, Devil, Satan. He cornered the staff member and made her stand there stating "bad things would happen" if she moved. He reports hearing God's/Jesus' voice telling him to do "good things" and Satan telling him to do "bad things." He also lunged at a staff worker…. He is guarded and warned staff he could "blow up at any time."

Piering also stated in his report that I.R.T. "was removed from his parents' home in his late teens because they were afraid he would kill his family. He has an explosive temper."

¶17    The circuit court did not err when it concluded that I.R.T is dangerous. The basis of I.R.T.'s argument on appeal is that the evidence related to I.R.T.'s dangerousness was based on "hearsay accounts of a singular event that had occurred more than two years earlier" and that he had "managed" without the County's assistance for the six months prior to the most recent order, as he had refused to comply with the court order then in effect. According to I.R.T., "[t]reatment was withdrawn, and [he] did not once again become a proper subject for commitment because he was not dangerous during that time period."

¶18    We have indicated that the purpose of WIS. STAT. § 51.20(1)(am) is

to avoid the 'revolving door' phenomena whereby there must be proof of a recent overt act to extend the commitment but because the patient was still under treatment, no overt acts occurred and the patient was released from treatment only to commit a dangerous act and be recommitted ... [in] a vicious circle of treatment, release, overt act, recommitment.

*Winnebago County v. S.H.*, 2020 WI App 46, ¶9, 393 Wis. 2d 511, 947 N.W.2d 761 (alteration in original; citation omitted). This is why evidence presented under the statute is rooted in the individual's treatment record. *See* § 51.20(1)(am) ("[T]he requirements of a recent overt act, attempt or threat to act … may be satisfied by a showing that there is a substantial likelihood, *based on the subject*

*individual's treatment record*, that the individual would be a proper subject for commitment if treatment were withdrawn." (emphasis added)). As we stated in ***S.H.***, "neither the statute nor the applicable case law requires an expert or circuit court to speculate on the precise course of an individual's impending decompensation by identifying specific *future* dangerous acts or omissions the individual might theoretically undertake without treatment" or at what point that decompensation might take place. *See **S.H.***, 393 Wis. 2d 511, ¶13. Therefore, "[d]angerousness in an extension proceeding can and often must be based on the individual's precommitment behavior, coupled with an expert's informed opinions and predictions (provided, of course, that there is a proper foundation for the latter)." ***Id.***

¶19 The court found that I.R.T. had not received treatment for six months and that he had "in fact decompensated." The experts' discussion of I.R.T's recent decompensation, resulting from his failure to comply with his treatment, was linked to his prior incidents involving dangerous behavior. The court concluded that, based on the experts' testimony, I.R.T. is mentally ill and a proper subject for treatment, and further found that the dangerousness component had been met. As the record on appeal supports this conclusion, the circuit court correctly found that "there is a substantial likelihood, based on the subject individual's treatment record" that I.R.T. is dangerous pursuant to Wis. Stat. § 51.20(1)(a)2. such that he "would be a proper subject for commitment if treatment were withdrawn." *See* § 51.20(1)(am). We affirm.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* Wis. Stat. Rule 809.23(1)(b)4.