COURT OF APPEALS
DECISION
DATED AND FILED

December 16, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal Nos.    **2019AP1228**
              **2020AP853**

Cir. Ct. No.  **2018ME182**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

IN THE MATTER OF THE MENTAL COMMITMENT OF R.O.V.:

FOND DU LAC COUNTY,

PETITIONER-RESPONDENT,

V.

R.O.V.,

RESPONDENT-APPELLANT.

APPEALS from orders of the circuit court for Fond du Lac County: DALE L. ENGLISH and ROBERT J. WIRTZ, Judges. *Affirmed.*

¶1  REILLY, P.J.[1] Ray[2] was taken into custody on an emergency detention on August 22, 2018, after his brother awoke to smoke in the house. Ray's brother found Ray burning items in the home and "trying to transfer fire from inside to outside the house." In this consolidated appeal, Ray appeals from orders of the circuit court involuntarily committing him under WIS. STAT. ch. 51 and extending his involuntary commitment.[3] Ray argues that Fond du Lac County (the County) failed to establish the dangerousness element at both his original commitment hearing and at a later extension hearing. As the County proved dangerousness at both hearings, we affirm.

*Background*

¶2  After Ray was taken into custody on the emergency detention, the County pursued a WIS. STAT. ch. 51 commitment. *See* WIS. STAT. § 51.15(5) ("The filing of the statement [of emergency detention] has the same effect as a petition for commitment under [WIS. STAT. §] 51.20."). At the commitment hearing, Dr. Marshall Bales, M.D., testified that Ray was mentally ill, a proper subject for treatment, and dangerous based on his starting the fire at the home.[4] Ray's brother also testified as to his recollection of the fire. The circuit court

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version.

[2] R.O.V. refers to himself in his briefs by the pseudonym "Ray." We will as well.

[3] The Honorable Dale L. English presided at the original commitment hearing and entered the orders for involuntary commitment and involuntary medication and treatment. The Honorable Robert J. Wirtz presided at the recommitment proceeding and entered the orders extending the involuntary commitment and for medication and treatment.

[4] We address the details of the testimony at these contested hearings later in the decision.

concluded that Ray was mentally ill, a proper subject for treatment, and dangerous pursuant to § 51.20(1)(a)2.c. The court entered a six-month commitment order and an order for involuntary medication and treatment. The original commitment order was extended for one year after a contested hearing on March 1, 2019.[5]

¶3 The County filed for another extension of Ray's commitment on February 6, 2020. At the hearing, Dr. J.R. Musunuru, M.D., and Dr. Kent Berney, Ph.D., testified. Based upon the experts' testimony, Ray was again found to be mentally ill and a proper subject for treatment, and the circuit court concluded that Ray "would be dangerous if treatment were withdrawn," pursuant to WIS. STAT. § 51.20(1)(am). The court entered a one-year extension of the orders for involuntary commitment and involuntary medication and treatment on March 5, 2020. Ray appeals.

*Involuntary Commitment*

¶4 To involuntarily commit a person, a county must prove three elements by clear and convincing evidence: (1) the person is mentally ill, (2) the person is a proper subject for treatment, and (3) the person is dangerous. *See* WIS. STAT. § 51.20(1)(a)1.-2., (13)(e); ***Langlade County v. D.J.W.***, 2020 WI 41, ¶¶23, 29, 391 Wis. 2d 231, 942 N.W.2d 277; ***Fond du Lac County v. Helen E.F.***, 2012 WI 50, ¶20, 340 Wis. 2d 500, 814 N.W.2d 179. In an original commitment proceeding, § 51.20(1)(a)2. outlines the avenues by which a person may be found

---

[5] This recommitment order is not an issue on appeal. Ray filed a motion with this court to dismiss his appeal from the first extension order as moot and asked to consolidate his appeal of the original commitment order with his appeal of the second extension order. We granted both requests.

"dangerous." Although there are five different means under the statute and an individual is "dangerous" if any of those means are demonstrated, **D.J.W.**, 391 Wis. 2d 231, ¶30, in this case, the circuit court applied § 51.20(1)(a)2.c., as it explained that "[t]he standard that has to be established by clear, satisfactory and convincing evidence is that [Ray] evidences judgment so impaired that a substantial probability exists of physical impairment or injury to himself or others as manifested by a pattern of recent acts or omissions."[6]

¶5 After an original commitment order, the circuit court may extend an individual's commitment for up to one year. WIS. STAT. § 51.20(13)(g)1.; **D.J.W.**, 391 Wis. 2d 231, ¶31. The same standards pursuant to § 51.20(1)(a) apply where the county seeks to extend the commitment, except it may satisfy the showing of

---

[6] WISCONSIN STAT. § 51.20(1)(a)2.c. provides that an individual is dangerous when he or she

> [e]vidences such impaired judgment, manifested by evidence of a pattern of recent acts or omissions, that there is a substantial probability of physical impairment or injury to himself or herself or other individuals. The probability of physical impairment or injury is not substantial under this subd. 2.c. if reasonable provision for the subject individual's protection is available in the community and there is a reasonable probability that the individual will avail himself or herself of these services, if the individual may be provided protective placement or protective services under [WIS. STAT.] ch. 55, or, in the case of a minor, if the individual is appropriate for services or placement under [WIS. STAT. §§] 48.13(4) or (11) or 938.13(4). The subject individual's status as a minor does not automatically establish a substantial probability of physical impairment or injury under this subd. 2.c. Food, shelter or other care provided to an individual who is substantially incapable of obtaining the care for himself or herself, by a person other than a treatment facility, does not constitute reasonable provision for the subject individual's protection available in the community under this subd. 2.c.

dangerousness by demonstrating "that there is a substantial likelihood, based on the subject individual's treatment record, that the individual would be a proper subject for commitment if treatment were withdrawn." Sec. 51.20(1)(am); *D.J.W.*, 391 Wis. 2d 231, ¶32.

¶6 WISCONSIN STAT. § 51.20(1)(am) recognizes that "an individual's behavior might change while receiving treatment" and, accordingly, "provides a different avenue for proving dangerousness if the individual has been the subject of treatment for mental illness immediately prior to commencement of the extension proceedings," as the individual "may not have exhibited any recent overt acts or omissions demonstrating dangerousness because the treatment ameliorated such behavior." *Portage County v. J.W.K.*, 2019 WI 54, ¶19, 386 Wis. 2d 672, 927 N.W.2d 509. Dangerousness, however, "remains an element to be proven to support both the initial commitment and any extension." *Id.*; *see also D.J.W.*, 391 Wis. 2d 231, ¶34. Section 51.20(1)(am) merely provides an "alternative evidentiary path." *J.W.K.*, 386 Wis. 2d 672, ¶19.

¶7 On appeal, Ray does not challenge that he is mentally ill and a proper subject for treatment. *See* WIS. STAT. § 51.20(1)(a)1. Ray also does not challenge the orders for involuntary medication and treatment. Ray challenges only the findings from both hearings that he is dangerous. The County argues that the dangerousness finding from the original commitment hearing is moot.

*Standards of Review*

¶8 We will first address the County's argument that Ray's appeal of his original commitment is moot, as that order has expired. Whether an issue is moot is a question of law that we review de novo. *Marathon County v. D.K.*, 2020 WI

5

8, ¶16, 390 Wis. 2d 50, 937 N.W.2d 901. Next, we will address whether the circuit court's original order for commitment was supported by the evidence, and, finally, we will address Ray's challenge to the most recent extension order. Whether the County has met its burden in a commitment proceeding is a mixed question of fact and law. *D.J.W.*, 391 Wis. 2d 231, ¶24. We will uphold the court's findings of fact unless clearly erroneous. *Id.* Whether the facts in the record satisfy the statutory standard for recommitment, however, is a question of law that this court reviews de novo. *Id.*, ¶25.

*Mootness*

¶9    The County argues that Ray's appeal of his original commitment order is moot. That order expired on March 3, 2019. Ray disagrees, noting that his appeal is not moot due to collateral consequences, including the firearms ban. The County, while admitting that our supreme court has stated that "collateral consequences" of a commitment may render it not a moot issue, *D.K.*, 390 Wis. 2d 50, ¶25, claims that Ray would still be subject to the collateral consequences of his first recommitment order, which is not at issue in this appeal. Thus, Ray "does not have any lasting collateral implications resulting from his original commitment order that he wouldn't already be subject to … and his appeal of his 2018 commitment is moot."

¶10    "Mootness is a doctrine of judicial restraint," *D.K.*, 390 Wis. 2d 50, ¶19, pursuant to which we may decline to reach an issue if its resolution "cannot have any practical effect upon an existing controversy," *J.W.K.*, 386 Wis. 2d 672, ¶11 (citation omitted). We will generally decline to reach a moot issue, as it does not affect a live controversy, unless it falls under an exception to the mootness doctrine. *D.K.*, 390 Wis. 2d 50, ¶19. These exceptions include: "(1) the issue is

6

of great public importance; (2) the issue involves the constitutionality of a statute; (3) the issue arises often and a decision from this court is essential; (4) the issue is likely to recur and must be resolved to avoid uncertainty; or (5) the issue is likely of repetition and evades review." *Id.* Our supreme court has stated that "collateral consequences" of a commitment may render it not a moot issue. *Id.*, ¶25.

¶11 To the extent that there is support for an argument that the original commitment order is moot, we conclude that Ray's appeal of his original commitment order should be decided on the merits.[7] Especially in the context of original commitments, which are applicable for only six months, this is "an issue that occurs frequently but is very often mooted by the passage of time." *See Waukesha County v. L.J.M.*, No. 2020AP820-FT, unpublished slip op. ¶16 (WI App Nov. 4, 2020).[8] Further, as Ray has already been subject to two recommitment hearings based on evidence presented at his original commitment, it is likely that he may again be subject to a commitment petition; therefore, "the issue is likely to recur" and, in the interest of finality, we think it "must be

---

[7] We note that our supreme court granted the petition for review in *Portage County v. E.R.R.*, No. 2019AP2033, unpublished slip op. (WI App May 21, 2020). There, we did not reach the merits of E.R.R.'s arguments because we concluded that the issues raised in the appeal were moot. *Id.*, ¶1. As we do not reach the same conclusion in this case as we did in *E.R.R.*, it does not appear that our supreme court's decision in that case would have a significant impact on our review here.

[8] We may cite an unpublished decision "for its persuasive value." WIS. STAT. RULE 809.23(3)(b).

7

resolved to avoid uncertainty" in future commitment hearings.[9]  *See D.K.*, 390 Wis. 2d 50, ¶19.

*Original Commitment Finding:  Evidence of Dangerousness*

¶12  Two witnesses testified at Ray's September 4, 2018 original commitment hearing:  Dr. Bales and Ray's brother.  Bales met with Ray on August 28, 2018, and based upon that examination, he testified that Ray is mentally ill ("bipolar disorder, manic, with psychotic features").  According to Bales, Ray was "acutely psychotic," "was really unable to really totally organize his thinking," was "hyper-religious," "distinctively delusional," "was inappropriately giggl[ing] in the interview," and "was having difficulty

---

[9] We also conclude that whether the evidence presented at Ray's original commitment hearing was sufficient to satisfy the dangerousness standard under WIS. STAT. § 51.20(1)(a)2.a.-e. impacts our review of Ray's current commitment extension, and, under the circumstances of this case, we cannot conclude that Ray's challenge to his original commitment "cannot have any practical effect upon an existing controversy."  *See Portage County v. J.W.K.*, 2019 WI 54, ¶11, 386 Wis. 2d 672, 927 N.W.2d 509.  We recognize that reversing a commitment order does not invalidate subsequent recommitment orders, *id.*, ¶21, but we also question whether evidence found insufficient to establish dangerousness at the original commitment hearing may then be used to prove the dangerousness element under § 51.20(1)(am) at an extension hearing, *id.*, ¶24, at least where there is no other evidence offered in support.  As the court explained in *D.J.W.*, decided after *J.W.K.*, § 51.20(1)(am) "mandates that circuit courts ground their conclusions in the subdivision paragraphs of [§ 51.20(1)(a)2.]."  *See Langlade County v. D.J.W.*, 2020 WI 41, ¶¶23, 29, 391 Wis. 2d 231, 942 N.W.2d 277.  This means that if "those behaviors" exhibited prior to the original commitment do not meet the requirements under § 51.20(1)(a)2. to establish that the individual is dangerous, then the individual should not be found dangerous "based on a substantial likelihood that he [or she] *would* exhibit those [same] behaviors if treatment were withdrawn."  *See J.W.K.*, 386 Wis. 2d 672, ¶23.  We acknowledge our supreme court's statement in *J.W.K.*, 386 Wis. 2d 672, ¶21, that "[e]ach order must independently be based upon current, dual findings of mental illness and dangerousness; accordingly, the sufficiency of the evidence supporting prior orders has no impact on any subsequent order."  Here, however, unlike in *J.W.K.*, the allegedly moot order is the original commitment order, not a recommitment order, and Ray does challenge a subsequent recommitment order as well based on the sufficiency of the same evidence.  This case is unusual, as both the original commitment order and a recommitment order are before us on appeal.

maintaining a coherent conversation." Ray did not believe he was mentally ill and stated that "the only medicine I need is God." Ray was "hearing voices telling him people are poisoning his food." Bales opined that Ray's diagnosis grossly impaired his judgment, behavior, and capacity to recognize reality.[10]

¶13 Bales testified that Ray admitted that he was burning things in the home and did not understand the dangerousness of doing so. When Bales tried to explain the dangerousness of burning things in the house, Ray laughed inappropriately and paged through his bible. Bales opined that while Ray could ordinarily care for his basic needs, he could not do so at the current time given his psychotic and delusional state, and that the least restrictive setting at the time was inpatient treatment.

¶14 Ray's brother testified that he awoke to smoke in the house and that Ray had set fire to some "personal items" and was "trying to transfer fire from inside to outside the house," which he explained as "burning paper in the stove and walking outside."

¶15 Based upon the above evidence, the court found the County had proven the dangerousness element by clear, satisfactory, and convincing evidence, as Ray was evidencing judgment so impaired that a substantial probability existed of physical impairment or injury to Ray or others based on his recent acts" as demonstrated by "the smoke in the house when [the brother] woke up and [Ray's] admission [to Bales] of burning things."

---

[10] Bales' report was not entered into evidence. Accordingly, we review only Bales' testimony at the hearing. *See D.J.W.*, 391 Wis. 2d 231, ¶7 n.4; *Winnebago County v. S.H.*, 2020 WI App 46, ¶2 n.3, 393 Wis. 2d 511, 947 N.W.2d 761.

¶16 Ray argues the evidence was weak, that it supports a finding that all of the burning was coming from the burn barrel outside, and that Ray did not start any fires in the home. We affirm the circuit court's conclusion, as there was contrary evidence that Ray did burn things in the home and was trying to transfer the fire outside and that Ray did not appreciate the dangerousness of doing so. The credibility of the witnesses and their testimony was for the finder of fact, and the court's findings were not clearly erroneous. Accordingly, we conclude that the evidence in the record supports a finding that Ray was dangerous pursuant to WIS. STAT. § 51.20(1)(a)2.c.

*Extension Hearing: Evidence of Dangerousness*

¶17 At the extension hearing, Dr. Musunuru, Dr. Berney, and Ray testified. Musunuru testified that Ray is his patient, and while Ray has not recently done anything dangerous, "he's still having his delusions and hallucinations" that bother him to the point that when he gets them he does not know what to do. According to Musunuru, Ray has had "fleeting" suicidal thoughts.

¶18 Musunuru's report, which was entered into evidence, indicates that Ray suffers from "Schizoaffective Disorder, bipolar subtype." According to Musunuru, Ray "continues to have delusional thoughts regarding being targeted by different organizations, including the illuminati," and "spends most of his time at home due to paranoia" because "[h]e worries about his safety and therefore sleeps with the lights on at night." Musunuru opined that if Ray were not on a commitment order he would stop his medications and become symptomatic and that when Ray "is not doing well, he can be dangerous to himself and/or other people. When he is not well, [Ray] has multiple different delusions."

¶19 Berney testified that Ray suffers from "either schizophrenia or schizoaffective disorder." Ray believes that the troubles he had that resulted in his commitment "were a result of witchcraft" and that he did not have a psychiatric disorder and did not need medications. Berney testified that Ray has a "very complex delusional belief system about being killed" and harbors that belief. Ray told Berney that he signed a contract with the ruler of the world and because he burned the contract that his symptoms would go away. Berney opined that Ray continues to experience a mental illness that is appropriate for consideration of commitment, and that if treatment were withdrawn, he would be a proper subject for treatment and a commitment. Berney testified that "at the time of his emergency detention in August of 2018, [Ray] had very significant symptoms of his psychiatric illness. He continues to have some of these symptoms at the time of my examination, while being treated with medications. And so, consequently, without the utilization of medication, I think that [Ray] would decompensate and, again, be a proper subject for commitment."

¶20 Berney's report, which was also entered into evidence, provides more detail into Ray's mental health. According to the Berney, Ray stated that at the time of the original commitment he was "hearing voices and seeing things. I think it was witchcraft. I signed a contract with the chief commander of this world." Ray believed that as a result of signing that contract, he was going to be killed, but Ray stated that he "burned the contract and I think that was mission accomplished, but I'm afraid I might have shortened my life span." Berney was of the opinion that Ray

> presented a substantial risk of danger to self and others as a result of grossly impaired judgment and behavior and dangerous behavior of starting a fire in his home. At the time of my present examination, I believe, to a reasonable

11

degree of psychological certainty, that if [Ray] is not treated for his psychiatric disorder that he would decompensate and be a proper subject for commitment.

¶21　The court found that both doctors testified that Ray was a proper subject for treatment and that their opinions encompassed dangerousness. According to the court, "there was the conclusion that because of the original commitment and the continued psychiatric condition of [Ray], that if treatment were presently withdrawn, that he would decompensate and become, essentially, back to the baseline. My words, not theirs. But that he would become a danger to himself or others." Based upon the experts' testimony, the court found that Ray was mentally ill and a proper subject for treatment, and that a substantial likelihood existed that Ray would be a proper subject for commitment if treatment were withdrawn. *See* WIS. STAT. § 51.20(1)(am).

¶22　Ray argues that sufficient proof of dangerousness was not shown. We disagree as there was sufficient evidence to satisfy the requirements under WIS. STAT. § 51.20(1)(a), (am).[11] As we have stated before, "[d]angerousness in an extension proceeding can and often must be based on the individual's precommitment behavior, coupled with an expert's informed opinions and predictions," and we have frequently affirmed a court's finding of dangerousness pursuant to an expert's opinion based on precommitment behavior. ***Winnebago***

---

[11] We note that the circuit court applied the standard for recommitment under WIS. STAT. § 51.20(1)(am) without also specifying the § 51.20(1)(a)2. dangerousness standard under which it was grounding its conclusion. *See **D.J.W.***, 391 Wis. 2d 231, ¶¶40-41, 50. We acknowledge, however, that the recommitment hearing in this case took place just shy of ***D.J.W.***'s release, so there is no error in the circuit court's failure to make that finding. *See **S.H.***, 393 Wis. 2d 511, ¶14. Ray does not make an argument to the contrary on appeal. We assume that as similar evidence was used at both the original commitment and the recommitment hearings, the County was proceeding under § 51.20(1)(a)2.c. "as viewed through the lens of § 51.20(1)(am)." *See **D.J.W.***, 391 Wis. 2d 231, ¶50.

*County v. S.H.*, 2020 WI App 46, ¶13, 393 Wis. 2d 511, 947 N.W.2d 761. There is no dispute that Ray is mentally ill and a proper subject for treatment. Based upon the testimony and written reports of Musunuru and Berney, the court had ample evidence of Ray's "paranoid delusional ideas" and prior dangerous behavior, including Ray's belief that he was going to be killed, his thoughts of suicide, and his burning things in the home. The evidence clearly established that "there is a substantial likelihood, based on the subject individual's treatment record" that Ray is dangerous pursuant to § 51.20(1)(a)2. such that he "would be a proper subject for commitment if treatment were withdrawn." *See* § 51.20(1)(am).

*Conclusion*

¶23 In order to commit a mentally ill person, the county "must prove that the person is *both* mentally ill and dangerous." *D.K.*, 390 Wis. 2d 50, ¶27 (emphasis added). The County met its burden to show by clear and convincing evidence that Ray is dangerous to himself or others. Accordingly, we affirm the circuit court's original commitment order and the March 5, 2020 extension/recommitment order.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

13