COURT OF APPEALS
DECISION
DATED AND FILED

December 14, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* Wis. Stat. § 808.10 and Rule 809.62.

Appeal No. **2022AP1155-FT**

STATE OF WISCONSIN

Cir. Ct. No. 2022ME31

IN COURT OF APPEALS
DISTRICT II

IN THE MATTER OF THE MENTAL COMMITMENT OF C.L.S.:

WINNEBAGO COUNTY,

PETITIONER-RESPONDENT,

V.

C.L.S.,

RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Winnebago County: BARBARA H. KEY, Judge. *Affirmed*.

¶1 NEUBAUER, J.[1] C.L.S. appeals from an order extending his commitment under WIS. STAT. ch. 51. The circuit court ordered him recommitted[2] for twelve months and ordered involuntary administration of medication and treatment during that time.[3] C.L.S. argues the circuit court erred in concluding that Winnebago County proved by clear and convincing evidence that he was dangerous under the fifth standard in WIS. STAT. § 51.20(1)(a)2.e. He also contends the circuit court failed to make the findings required under *Langlade County v. D.J.W.*, 2020 WI 41, ¶59, 391 Wis. 2d 231, 942 N.W.2d 277. This court affirms.

## BACKGROUND

¶2 In January 2022, C.L.S.'s treating psychiatrist, Dr. George Monese, wrote a letter to the circuit court recommending an extension of C.L.S.'s involuntary commitment. In the letter, Monese wrote that C.L.S. has a "history of bipolar 2 disorder" and tried to commit suicide several years earlier after he stopped taking medication and experienced "auditory hallucinations." Monese recommended the extension because C.L.S. told him that "even though [C.L.S.] understands he has a serious mental illness, he still has residual psychosis on and off which he fears might overpower him and lead him to stop taking medications if

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] "[R]ecommitment" is synonymous with "extension of a commitment," and the terms will therefore be used interchangeably. *See Sheboygan County v. M.W.*, 2022 WI 40, ¶6 n.3, 402 Wis. 2d 1, 974 N.W.2d 733.

[3] C.L.S. did not list the involuntary medication order in his Notice of Appeal, so this court construes his appeal to only concern the recommitment order.

off commitment." Monese stated further that C.L.S. had indicated he would immediately stop taking his medications if his commitment ended.

¶3 Monese also submitted a form to the County requesting the extension of C.L.S.'s commitment and involuntary medication orders, asserting that C.L.S. "is mentally ill and his diagnosis is Bipolar II disorder," which continues to substantially impair his thought, mood, judgment, and "capacity to recognize reality." In addition to C.L.S.'s mental illness, Monese wrote that he believed C.L.S. "is a proper subject for treatment" and, pursuant to the fifth standard for dangerousness, WIS. STAT. § 51.20(1)(a)2.e., "is dangerous because there is a substantial likelihood, based on his treatment record, that he would become a proper subject for commitment if treatment were withdrawn." Finally, Monese wrote that C.L.S. is "not competent to refuse medication or treatment" because Monese "recently tried to explain to [C.L.S.] the advantages, disadvantages, and alternatives to accepting a particular medication or treatment" and found C.L.S. "substantially incapable of applying an understanding of the advantages, disadvantages, and alternatives to his mental illness in order to make an informed choice as to whether to accept or refuse medication or treatment."

¶4 The County then filed a Petition for Recommitment and for Involuntary Medication or Treatment. The circuit court held a two-day hearing on the petition in March 2022 at which Monese was the only witness to testify. Monese testified that C.L.S. has been his patient since 2010 or 2011. He met with C.L.S. two days before the hearing, discussed C.L.S. with staff at the Wisconsin Resource Center, and reviewed his medical records. Monese identified C.L.S.'s diagnosis as "Bipolar disorder, type 2," which he described as a disorder of "[t]hought and mood, mostly." He agreed that C.L.S.'s condition "grossly

impair[s] his judgment, behavior, [and] capacity to recognize reality" when he is "off treatment" and that C.L.S. remains "a proper subject for treatment."

¶5    When asked if C.L.S. would "become a proper subject for commitment" if his treatment were withdrawn, Monese said "certainly that will be the case," pointing to two prior instances in which he had attempted suicide after his medications were changed or stopped, one of which occurred three or four years ago.[4]  Monese also testified that C.L.S. has a history of hearing voices when he stops taking medication or when it is changed.  Responding to a question about C.L.S.'s need for further treatment, Monese referenced these voices and C.L.S.'s disinclination to continue taking his medication voluntarily:

> He told me frankly that he would not take the medications without a court commitment.  He's ambivalent.  Ambivalence is very common in people with [a] major thought disorder like he [has].  They kind of believe that they have the mental illness, they don't believe, they kind of question, and he falls in that category too and that is not surprising.
>
> He told me that the voices told him before that he should stop taking treatment a few years ago when he attempted to hang himself and there was the case.  So he's not able really to comprehend how … the medications are going to best help him and stay consistent in taking them.  So the insight is very questionable.

As to "recent acts or omissions" that led Monese to believe continued commitment and treatment "would prevent further disability or deterioration," Monese testified that C.L.S. had told him "recently … he had the voices telling him you better stop

---

[4] On cross-examination, Monese testified that C.L.S. has a history of suicide attempts dating back to 2003.

taking th[ese] medications. And then he was kind of feeling that overpowering him."

¶6 When asked if C.L.S. showed "a substantial probability" that he would "lack the services necessary for his health or safety," Monese responded: "[C.L.S.] said that himself, he said if I don't have the commitment I am not going to take the medications because the voices would tell me to and I tend to listen to my voices." Monese also responded "Yes" when asked if C.L.S. had shown "a substantial probability" he would "suffer … severe mental, emotional, or physical harm resulting in loss of his ability to function independently" and "could potentially lose his cognitive or volitional control of [his] thoughts or actions" if he was not treated. As an example of the risks C.L.S. faces, Monese said that C.L.S. could "do what the voices tell him to, like hanging himself, he can suffer from that and die; or he can have debilitating neurological effects resulting from that attempted hanging or any form of attempted suicide."

¶7 In addition, Monese confirmed that C.L.S.'s mental illness renders him "incompetent" to make decisions about his medication or treatment. He testified that he identified several advantages of taking medication for C.L.S., such as the ability to better "control these bad thoughts of him wanting to kill himself" and improved mood, as well as several disadvantages ("lack of motivation, maybe tiredness, maybe some muscle stiffness"), but C.L.S. "wasn't able to use that information to his best interest."

¶8 After Monese finished testifying, the parties made their final arguments. The County argued that it proved each element for recommitment, including that C.L.S. was dangerous under the fifth standard, WIS. STAT. § 51.20(1)(a)2.e. C.L.S. argued that the most recent suicide attempt Monese had

testified about occurred in 2016, and the County had not shown any "recent acts or omissions" to support a finding that he is currently dangerous. The County attributed the lack of a "recent overt act … to the fact that [C.L.S.] remains on medication" that "is beneficial and … is having a therapeutic benefit."

¶9 The circuit court determined that the County met its burden of proof. Drawing on the "very specific testimony" from Monese, it found that C.L.S. "is suffering from bipolar type 2 disorder … a substantial disorder of thought and mood that is grossly impairing his judgment, behavior, ability to meet the ordinary demands of life, [and] capacity to recognize reality." The court also found that C.L.S. would become a "proper subject for commitment" if his treatment were withdrawn. It described C.L.S.'s case as "one of the more stark cases in which the person has said if I don't take those medications, I will listen to those voices that I shouldn't be listening to" and noted his prior "serious suicide attempts." The court also found that C.L.S. would be "a significant danger to himself" "[w]ithout the proper treatment and medications." Based upon its findings, the court determined C.L.S. to be dangerous under the fifth standard, ordered C.L.S. recommitted for twelve months, and ordered the continued administration of involuntary medication.

## DISCUSSION

¶10 "To prevail in a recommitment proceeding, the County must prove the same elements necessary for the initial commitment by clear and convincing evidence—that the patient is (1) mentally ill; (2) a proper subject for treatment; and (3) dangerous to themselves or others." *D.J.W.*, 391 Wis. 2d 231, ¶31.

¶11 WISCONSIN STAT. § 51.20(1)(a)2.a.-e. sets out five standards for proving dangerousness. Here, the County sought recommitment under the fifth

6

standard, § 51.20(1)(a)2.e., which required it to prove the following by clear and convincing evidence:

> (1) C.L.S. is mentally ill;
>
> (2) C.L.S.'s mental illness prevents him from making an informed choice as to whether to accept or refuse treatment;
>
> (3) C.L.S. shows a substantial probability that he needs care or treatment to prevent further disability or deterioration, based upon his treatment history and recent acts or omissions;
>
> (4) C.L.S. evidences a substantial probability that he will lack services necessary for his health and safety if he is left untreated; and
>
> (5) C.L.S. evidences a substantial probability that he will suffer mental, emotional, or physical harm if left untreated, resulting in the loss of either his ability to function independently in the community or cognitive or volitional control over his thoughts or actions.

*See* § 51.20(1)(a)2.e., (13)(e); ***State v. Dennis H.***, 2002 WI 104, ¶¶19, 21-24, 255 Wis. 2d 359, 647 N.W.2d 851.[5]

---

[5] WISCONSIN STAT. § 51.20(1)(a)2.e., in relevant part, defines an individual as dangerous if:

(continued)

7

¶12 However, an individual receiving treatment may not have exhibited any recent overt acts or omissions demonstrating dangerousness because the treatment ameliorated such behavior. Thus, in the context of a recommitment, the County may instead show that there is a substantial likelihood of dangerousness should treatment lapse. *Portage County v. J.W.K.*, 2019 WI 54, ¶19, 386 Wis. 2d 672, 927 N.W.2d 509. Accordingly, dangerousness in extension proceedings "may be satisfied by a showing that there is a substantial likelihood, based on the subject individual's treatment record, that the individual would be a proper subject for commitment if treatment were withdrawn." WIS. STAT. § 51.20(1)(am).

¶13 Notably, this "standard is not more or less onerous" than the standard for initial commitment; "the constitutional mandate that the County prove an individual is both mentally ill and dangerous by clear and convincing evidence remains unaltered." *J.W.K.*, 386 Wis. 2d 672, ¶24. If the County relies on WIS. STAT. § 51.20(1)(am) to prove dangerousness, a link to one of the five

after the advantages and disadvantages of and alternatives to accepting a particular medication or treatment have been explained to him or her and because of mental illness, [the individual] evidences either incapability of expressing an understanding of the advantages and disadvantages of accepting medication or treatment and the alternatives, or substantial incapability of applying an understanding of the advantages, disadvantages, and alternatives to his or her mental illness in order to make an informed choice as to whether to accept or refuse medication or treatment; and evidences a substantial probability, as demonstrated by both the individual's treatment history and his or her recent acts or omissions, that the individual needs care or treatment to prevent further disability or deterioration and a substantial probability that he or she will, if left untreated, lack services necessary for his or her health or safety and suffer severe mental, emotional, or physical harm that will result in the loss of the individual's ability to function independently in the community or the loss of cognitive or volitional control over his or her thoughts or actions.

dangerousness standards in § 51.20(1)(a)2. is required. *See D.J.W.*, 391 Wis. 2d 231, ¶¶32-34. Moreover, "[i]t is not enough that the individual was at one point a proper subject for commitment." *J.W.K.*, 386 Wis. 2d 672, ¶24. "Each extension hearing requires proof of *current* dangerousness." *Id.*

¶14 This court's review of the circuit court's decision presents a mixed question of law and fact. *D.J.W.*, 391 Wis. 2d 231, ¶24. We will uphold a circuit court's findings of fact unless they are clearly erroneous, but whether the facts satisfy the statutory standard of dangerousness is a question of law that we review independently. *Id.*, ¶¶24-25.

¶15 C.L.S. does not contest the circuit court's finding that he is mentally ill but contends that the court's findings on the other four elements of dangerousness under the fifth standard rest solely on "unsupported conclusory assertions by Dr. Monese" that merely parroted the language of the statute. Although the record in this case is somewhat sparse, the County presented sufficient evidence to prove that C.L.S. was dangerous under the fifth standard.

¶16 First, Dr. Monese testified that C.L.S.'s mental illness renders him "incompetent" to make decisions about his medication or treatment. Other evidence in the record supports this statement. When asked about the effects C.L.S.'s bipolar disorder has on him, Monese agreed that it causes him to hear voices, substantially disrupts his thoughts and mood, and impairs his "judgment, behavior, [and] capacity to recognize reality." He recounted how the voices C.L.S. reports hearing have told C.L.S. to stop taking the medications that "help[] him control these bad thoughts of him wanting to kill himself." It is self-evident that a person must be able to exercise sound judgment based on facts in order to make competent decisions about medical care. The evidence presented to the

circuit court shows that C.L.S.'s bipolar disorder prevents him from doing so and thus supports the court's determination that C.L.S. is not competent to make informed decisions about whether to accept or refuse treatment.

¶17 Next, Monese's testimony also showed that C.L.S. needs care or treatment to prevent further disability or deterioration. Monese, who has treated C.L.S. for more than a decade, testified about prior instances in which C.L.S. had heard voices and attempted suicide after his medications had been reduced or stopped. Monese also related that C.L.S. said he would not take his medication if not under a court order to do so. Finally, as allowed under WIS. STAT. § 51.20(1)(am), Monese explained that if C.L.S.'s treatment lapsed, he would become a proper subject for commitment because he would be more likely to listen to and act on the voices that urge him to stop taking his medication and harm himself. In relaying C.L.S.'s history of suicide attempts and his statements about discontinuing medications in the future, Monese offered more than an unadorned opinion repeating the relevant statutory language to explain why C.L.S. would become a proper subject for commitment if treatment was withdrawn. *See Winnebago County v. S.H.*, 2020 WI App 46, ¶17, 393 Wis. 2d 511, 947 N.W.2d 761 ("[C]onclusory opinions parroting the statutory language without actually discussing dangerousness … are insufficient to prove dangerousness in an extension hearing."). Monese's testimony shows a substantial probability that C.L.S. needs to continue treatment to prevent further deterioration or disability.

¶18 Additionally, Monese's testimony that C.L.S. told him he would listen to the voices in his head that have urged him to harm himself and to stop taking his medication showed a substantial probability that C.L.S. would lack services necessary for his health and safety if left untreated.

¶19     Finally, Monese's testimony established a substantial probability that C.L.S. would suffer mental, emotional, or physical harm if left untreated and would not be able to function independently in the community or maintain control over his thoughts or actions. Monese's testimony on this and the other elements of dangerousness was not conclusory in the sense that it lacked support in the record. It is apparent that Monese drew on his experience as a psychiatrist and his communications with, and observations of, C.L.S. during more than ten years of treating him as a basis for his opinions.

¶20     In describing specific prior instances of dangerous behavior that were directly tied to changes or cessations of medication and C.L.S.'s repeated statements that he would stop taking his medication absent a court order, Monese linked C.L.S.'s past dangerousness with a substantial likelihood that such behavior would occur again absent an extension order. The circuit court clearly found Monese to be credible, and C.L.S. has provided no reason why it clearly erred in making that determination. *See State v. Thiel*, 2003 WI 111, ¶23, 264 Wis. 2d 571, 665 N.W.2d 305 (we will not overturn a circuit court's credibility finding unless it is clearly erroneous).

¶21     This court is also not convinced that Dr. Monese's use of statutory language in his testimony somehow renders his opinions or his testimony insufficient. The record reflects that many of the questions the County asked "parroted" the statutory language, but this is the nature of these types of cases. Reference to the statutory language ensures that a subject is not committed unlawfully; our supreme court has reversed a commitment when an expert did not use the statutory terminology. *See Outagamie County v. Melanie L.*, 2013 WI 67, ¶91, 349 Wis. 2d 148, 833 N.W.2d 607. This court is convinced from Monese's testimony that he did not merely parrot the statute, but rather that his opinions

11

were well grounded in the facts. Specifically, Monese's opinions rest on his knowledge of C.L.S.'s type of mental illness, his personal interactions with C.L.S. and more than ten years of experience as his treating psychiatrist, C.L.S.'s treatment records, and C.L.S.'s insistence that he would discontinue his medication if he were released from the commitment. Monese cited C.L.S.'s prior statements and behavior to support his explanation that C.L.S. has a mental illness and that without the proper medication and treatment, C.L.S. would be a danger to himself. The circuit court did not err in concluding from Dr. Monese's testimony and all reasonable inferences derived therefrom that the County proved by clear and convincing evidence that C.L.S. was dangerous under WIS. STAT. § 51.20(1)(am) with a link to § 51.20(1)(a)2.e., the fifth dangerousness standard.

¶22 C.L.S.'s other argument is that the circuit court did not make the specific findings required under *D.J.W.* In that case, the Wisconsin Supreme Court instructed circuit courts "to make specific factual findings with reference to the subdivision paragraph of WIS. STAT. § 51.20(1)(a)2. on which the recommitment is based." *D.J.W.*, 391 Wis. 2d 231, ¶3. The court identified two purposes served by this requirement. First, it ensures that the individual will know which dangerousness standard forms the basis of the commitment. *Id.*, ¶42. Second, it facilitates appellate review of recommitment orders by ensuring a clearer and more substantial record to review. *Id.*, ¶44.

¶23 C.L.S. analogizes the present case to an unpublished decision from this court, *Ozaukee County v. J.D.A.*, No. 2021AP1148, unpublished slip op. (WI

App Dec. 15, 2021),[6] which reversed recommitment and involuntary medication orders because the circuit court had not satisfied *D.J.W.*'s mandate by making specific factual findings on several factors under the fifth standard. In *J.D.A.*, this court noted that the county had not presented evidence as to the factors in question, which presumably explained why the circuit court had not addressed them. *J.D.A.*, No. 2021AP1148, ¶¶20-23. In the present case, by contrast, the County elicited testimony from Dr. Monese as to each element under the fifth standard and to WIS. STAT. § 51.20(1)(am). In its oral ruling, the circuit court specifically found that C.L.S. suffers from a mental illness, is not competent to refuse treatment, poses a danger to himself if not on medication, and would become a proper subject for treatment commitment if treatment were withdrawn. The absence of proof that accounted for the missing findings in *J.D.A.* is simply not present here, and the circuit court's findings, though they could have been more expansive, were sufficient to comply with *D.J.W.*

¶24 In addition, the proceedings in the circuit court satisfied the purposes underlying the *D.J.W.* directive. In its recommitment petition, the County sought recommitment under the fifth standard, WIS. STAT. § 51.20(1)(a)2.e., and invoked the "alternate avenue of *showing* dangerousness" provided by § 51.20(1)(am). *See J.W.K.*, 386 Wis. 2d 672, ¶24. Monese testified as to the elements for commitment under the fifth standard and § 51.20(1)(am), and both the County and C.L.S.'s counsel cited the fifth standard in their closing arguments. C.L.S. therefore knew which dangerousness standard the County sought to extend his

---

[6] Though unpublished, *Ozaukee County v. J.D.A.*, No. 2021AP1148, unpublished slip op. (WI App Dec. 15, 2021), may be cited for persuasive value. *See* WIS. STAT. RULE 809.23(3)(b).

13

commitment under. In addition, the circuit court specifically found C.L.S. to be dangerous under the fifth standard.[7] The parties knew which statutory standards were being applied, and the court's ruling informs this court which standard it applied and its reasons for doing so.

> *By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[7] The circuit court also referred to "the (a) standard" in its oral ruling, but we do not take its statement that the County "may" have shown C.L.S. to be dangerous under that standard as the basis for the court's ruling, particularly in view of its unequivocal statement that the County had "certainly" established dangerousness under the fifth standard.