COURT OF APPEALS
DECISION
DATED AND FILED

January 24, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1484**

Cir. Ct. No. **2022ME134**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

IN THE MATTER OF THE CONDITION OF D.S.:

WINNEBAGO COUNTY,

    PETITIONER-RESPONDENT,

  V.

D.S.,

    RESPONDENT-APPELLANT.

APPEAL from orders of the circuit court for Winnebago County: MICHAEL S. GIBBS, Judge. *Affirmed.*

¶1      NEUBAUER, J.[1] D.S., referred to herein by the pseudonym Dennis, appeals from orders extending his involuntary commitment for twelve months and allowing Winnebago County to involuntarily medicate and treat him during the extension period. Dennis argues the County failed to prove dangerousness by clear and convincing evidence and that the circuit court failed to make sufficient factual findings to support a conclusion of dangerousness. For the reasons that follow, this court affirms.

### Statutory Background

¶2      An individual may be involuntarily committed upon clear and convincing evidence that he or she is mentally ill, a proper candidate for treatment, and dangerous. WIS. STAT. § 51.20(1)(a)1.-2., (13)(e). An involuntary commitment may be extended for up to twelve months upon proof of "the same elements necessary for the initial commitment by clear and convincing evidence— that the patient is (1) mentally ill; (2) a proper subject for treatment; and (3) dangerous to themselves or others." *Langlade County v. D.J.W.*, 2020 WI 41, ¶31, 391 Wis. 2d 231, 942 N.W.2d 277. To extend a commitment, the County must prove that the individual is currently dangerous; proof of past dangerousness will not suffice. *Id.*, ¶34. In this appeal, Dennis challenges the County's proof only on the element of dangerousness.

¶3      WISCONSIN STAT. § 51.20(1)(a)2. sets forth five standards under which the County may establish dangerousness. In this case, the County sought to extend Dennis's commitment by establishing dangerousness under the fifth

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

standard, § 51.20(1)(a)2.e.[2] The fifth standard is a lengthy provision that, in this case, required the County to prove the following:

> (1) the advantages, disadvantages, and alternatives to a particular medication or treatment were explained to Dennis;
>
> (2) Dennis's mental illness makes him either (a) incapable "of expressing an understanding of the advantages and disadvantages of accepting medication or treatment and the alternatives" or (b) substantially incapable "of applying an understanding of the advantages, disadvantages, and alternatives to his or her mental illness in order to make an informed choice as to whether to accept or refuse medication or treatment";
>
> (3) Dennis shows "a substantial probability" that he "needs care or treatment to prevent further disability or deterioration," based upon his "treatment history and his … recent acts or omissions";

---

[2] WISCONSIN STAT. § 51.20(1)(a)2.e. states in part that an individual who is not "alleged to be drug dependent or developmentally disabled" is dangerous if:

> after the advantages and disadvantages of and alternatives to accepting a particular medication or treatment have been explained to him or her and because of mental illness, evidences either incapability of expressing an understanding of the advantages and disadvantages of accepting medication or treatment and the alternatives, or substantial incapability of applying an understanding of the advantages, disadvantages, and alternatives to his or her mental illness in order to make an informed choice as to whether to accept or refuse medication or treatment; and evidences a substantial probability, as demonstrated by both the individual's treatment history and his or her recent acts or omissions, that the individual needs care or treatment to prevent further disability or deterioration and a substantial probability that he or she will, if left untreated, lack services necessary for his or her health or safety and suffer severe mental, emotional, or physical harm that will result in the loss of the individual's ability to function independently in the community or the loss of cognitive or volitional control over his or her thoughts or actions.

> > (4) Dennis evidences "a substantial probability that he … will … lack services necessary for his … health or safety" if he is left untreated; and
> >
> > (5) Dennis evidences "a substantial probability that he … will … suffer severe mental, emotional, or physical harm" if left untreated, resulting in the loss of either his "ability to function independently in the community" or "cognitive or volitional control over his … thoughts or actions."

*See id.*; *State v. Dennis H.*, 2002 WI 104, ¶¶19, 21-24, 255 Wis. 2d 359, 647 N.W.2d 851.

¶4    An individual who receives treatment immediately before an extension is sought may not behave in a manner that demonstrates current dangerousness.  For such individuals, WIS. STAT. § 51.20(1)(am) provides an alternative way to establish dangerousness:  in lieu of recent acts or omissions, the County may instead prove "that there is a substantial likelihood, based on the subject individual's treatment record, that the individual would be a proper subject for commitment if treatment were withdrawn."  The County opted to seek an extension using this "alternative evidentiary path."  *See Portage County v. J.W.K.*, 2019 WI 54, ¶19, 386 Wis. 2d 672, 927 N.W.2d 509.

*Sufficiency of Evidence on Dangerousness*

¶5    At the extension hearing, the County's evidence consisted of testimony from Dr. Michael Vicente, Dennis's treating psychiatrist, and Vicente's report of his examination of Dennis, which the circuit court received into evidence over Dennis's objection.  Whether that evidence was sufficient to satisfy the statutory standard for dangerousness is a legal question that this court reviews independently of the circuit court.  *See D.J.W.*, 391 Wis. 2d 231, ¶47.

¶6 Based upon his examination and observations of Dennis and review of Dennis's treatment records, Vicente testified that Dennis met the three requirements for recommitment. First, he testified that Dennis suffers from schizophrenia, a "substantial disorder" that "grossly impairs his judgment, behavior, and capacity to recognize reality." In his report, Vicente wrote that Dennis had "[c]omplained of auditory hallucinations ('influences') that gave him messages and directions." At the hearing, Vicente testified that Dennis "had stated that he feared for his own safety because whether it was the military, or Germans, or other things that the influences informed him that they would do things, such as set him on fire and other harmful things."

¶7 Second, Vicente confirmed that Dennis is a proper subject for treatment.

¶8 Third, Vicente opined that Dennis is dangerous under the fifth standard. Vicente also addressed the WIS. STAT. § 51.20(1)(am) alternative, agreeing that Dennis would become a proper subject for treatment if treatment were withdrawn based on his prior history. In the past, Vicente explained, Dennis stopped treatment when prior commitment orders expired and thereafter "start[ed] displaying some of the symptoms, such as … believ[ing] that his influences were telling him to go to other homes because they belonged to him even though they belonged to other people. He would look inside their windows." In his report, Vicente cited two instances in which Dennis had been involuntarily committed after attempting to break into houses "because he believed either German nationals resided there or it was the property of Germany." Nine months after the second of these commitments expired, Vicente wrote, Dennis was again detained after "scar[ing] his neighbors by showing up on their property [and] staring through their windows," telling the neighbors "that he believed their home was the

property of Germany." According to Vicente's report, a temporary restraining order was entered against Dennis but he continued to trespass on the neighbors' property. Vicente agreed that Dennis "would be dangerous if treatment were withdrawn."

¶9 Turning to the elements for dangerousness under the fifth standard, Vicente confirmed that he had explained the advantages (decrease in impulsivity and other symptoms), disadvantages ("muscle movements, dry mouth, dizziness, tiredness, [and] some weight changes"), and alternatives (other medications, counseling) to the medication Dennis had been taking and which Vicente recommended he be required to continue taking. Next, when asked if Dennis is capable "of expressing an understanding of the advantages, disadvantages, and alternatives of accepting medication," Vicente testified that "[h]e is not." On this point, Vicente wrote in his report that Dennis lacks "insight into how the psychosis influences his thinking and behavior."

¶10 Vicente was also asked if he believed that Dennis "evidences … a substantial probability that, if left untreated, he would lack services necessary for his health and safety that could result in the loss of his ability to function independently in the community." In response, he stated that Dennis's "actions, due to the influences, put him in dangerous situations, such as going to someone's house and trying to enter it, believing it's his." Vicente testified that medication "seems to have improved" Dennis's problematic behavior prompted by his delusions, but that the delusions themselves "are ongoing." Vicente also testified that Dennis does not believe he is mentally ill or needs medication. In his report, Vicente wrote that Dennis had reported his intention to "discontinue medications once his court order has ended." In a section of his report regarding information relevant to the issue of dangerousness, Vicente wrote:

> [Dennis] recently reported that "the military" told him to go to a nearby home that belonged to him. He also believed the military was looking to hurt him. He does not believe he suffers from a mental illness, and he would stop all treatment if not on commitment (as he has done in the past).

¶11    Dennis contends that the County presented little other than "Vicente's conclusory testimony" to establish the elements for dangerousness under the fifth standard. He also contends that the County did not carry its burden of proving that reasonable provision for his care or treatment is not available in the community. This argument invokes the following portion of the fifth standard:

> The probability of suffering severe mental, emotional, or physical harm is not substantial under [WIS. STAT. § 51.20(1)(a)]2.e. if reasonable provision for the individual's care or treatment is available in the community and there is a reasonable probability that the individual will avail himself or herself of these services.

Sec. 51.20(1)(a)2.e. On this point, Dennis notes that Vicente agreed that Dennis lives in a "stable residence" with his parents, who are supportive, and that "he's able to communicate his needs."

¶12    This court concludes that Vicente's testimony and report were sufficient to carry the County's burden of proving dangerousness by clear and convincing evidence. Taking the elements of the fifth standard as laid out above, Vicente gave unchallenged testimony that he explained the advantages, disadvantages, and alternatives to medication to Dennis but that Dennis could not express an understanding of them.

¶13    Vicente also cited several past instances in which Dennis stopped treatment and later acted on the "influences" telling him to approach or enter the homes of others, behavior that endangers himself and others. Vicente stated further that medication appeared to have improved his behavior. But according to

7

his report, Dennis "does not believe medication is helpful in reducing the issues he has with 'information and influence'" and would not continue taking it absent court order. This evidence was sufficient to establish a substantial probability that Dennis needs continuing treatment to prevent further deterioration and that if left untreated, Dennis will lack services necessary for his health and safety.

¶14 Finally, Dennis's history of repeatedly attempting to enter the homes of others while not taking medication because of the delusions brought on by his mental illness establishes a substantial probability that if he does not continue to take medication, he will suffer severe mental, emotional, or physical harm and lose his ability to independently function in the community. Vicente's testimony and report show that medication is necessary to curb the dangerous behavior that Dennis has exhibited in the past and that he must be compelled by court order to take it.

¶15 Dennis's arguments fail to demonstrate that the County did not meet its burden to establish dangerousness under WIS. STAT. § 51.20. This court disagrees with his characterization of Vicente's testimony as "conclusory." Although some of the questions put to Vicente simply asked him to agree or disagree that Dennis satisfied certain aspects of the fifth standard, Vicente supplemented these answers in his testimony and report with details about Dennis's mental illness, its effects, and his past behavior to establish dangerousness by clear and convincing evidence. Moreover, the County's evidence did show a "substantial" probability of harm because given Dennis's prior history and stated intent not to continue voluntarily taking medication, it is not reasonably probable that Dennis would continue to avail himself of that medication, which is necessary to treat his condition, unless he is under court order to do so.

*Circuit Court Findings*

¶16 Dennis next argues the circuit court failed to make sufficient factual findings to show that he is dangerous under the fifth standard. In support, he cites the Wisconsin Supreme Court's decision in ***D.J.W.***, in which the court instructed circuit courts "to make specific factual findings with reference to the subdivision paragraph of WIS. STAT. § 51.20(1)(a)2. on which the recommitment is based." ***D.J.W.***, 391 Wis. 2d 231, ¶3. The court instituted this requirement to further two underlying goals: (1) to "provide[] clarity and extra protection to patients regarding the underlying basis for a recommitment"; and (2) to "clarify issues raised on appeal of recommitment orders and ensure the soundness of judicial decision making, specifically with regard to challenges based on the sufficiency of the evidence." *Id.*, ¶¶42, 44.

¶17 Initially, this court agrees with the County that the record is clear as to which standard of dangerousness the circuit court applied in this case. Vicente's testimony and report invoked the fifth standard, the parties tailored their arguments to that standard, and the court focused on the fifth standard in its oral ruling. Neither Dennis, the circuit court, nor this court are unclear as to the "underlying basis" for his recommitment. *See id.*, ¶42. The purposes furthered by the "specific factual findings" requirement were met here.

¶18 Notwithstanding this clarity, Dennis raises two specific arguments concerning the circuit court's findings. First, he argues that the findings on several elements of the fifth standard are clearly erroneous. Second, he contends that the circuit court's ruling consists largely of recitations of the elements of the fifth standard and that the court did not point to facts that establish those elements in its oral ruling.

9

¶19 Dennis's first argument lacks merit. In its oral ruling, the circuit court referred to Vicente's testimony "that, in the past, there were restraining orders that were taken out against [Dennis]." Dennis argues any finding based on this testimony was clearly erroneous because the court only admitted the testimony over Dennis's hearsay objection after determining that the testimony was not offered for its truth. Not so. The court only made that ruling with respect to Vicente's testimony that he *did not comply* with the restraining orders. As to whether the orders *existed*, the court allowed that testimony and overruled Dennis's objection that it lacked foundation.

¶20 Dennis also challenges the circuit court's finding that he went to other people's houses because of his delusions, arguing that this finding is not the same as the behavior the court identified as inherently risky—"go[ing] into a house or near a window of another person without their permission." This court is not convinced that these two behaviors are meaningfully different. The act of trespassing on another's property and attempting to enter a home in which Dennis did not live because of delusional thoughts put at risk Dennis's physical safety and that of the occupants. The circuit court's finding was the same behavior it correctly described as risky.

¶21 Finally, Dennis contends the circuit court clearly erred in finding Dennis's statement that he did not intend to voluntarily continue taking medication to be the required "recent act or omission" under the fifth standard. This argument fails because the County did not have to establish dangerousness through Dennis's recent acts or omissions; it could, and did, proceed under the alternative in WIS. STAT. § 51.20(1)(am) available for persons who are subject to treatment immediately before recommitment.

¶22 Turning to Dennis's second argument, the County raises several points in response. First, it contends that the circuit court "thoughtfully applied relevant facts to most of" the elements of the fifth standard and that this court "can assume the court implicitly accepted the doctor's testimony about all the elements as true." The County also argues that Dennis forfeited his ability to raise a *D.J.W.* challenge by not objecting prior to the conclusion of the recommitment hearing or by filing a post-commitment motion. Finally, the County argues that if the circuit court's findings are not sufficient under *D.J.W.*, that error is harmless. *See* WIS. STAT. § 51.20(10)(c) (instructing courts to "disregard any error or defect in the pleadings or proceedings that does not affect the substantial rights of either party").

¶23 This court need not address the County's forfeiture and harmless error arguments because it concludes that the circuit court's findings were sufficient under *D.J.W.* In the wake of *D.J.W.*, it is clear that "conclusory opinions parroting the statutory language without actually discussing dangerousness[] are insufficient to prove dangerousness in an extension hearing." *Winnebago County v. S.H.*, 2020 WI App 46, ¶17, 393 Wis. 2d 511, 947 N.W.2d 761. The circuit court's oral ruling contains the required discussion.

¶24 To be sure, the circuit court quoted heavily from WIS. STAT. § 51.20 in its ruling. The court referred to the three elements that the County must prove to recommit an individual, the five elements for the fifth standard listed in paragraph three above, and the § 51.20(1)(am) alternative to establish dangerousness. The court also referred to the portion of the fifth standard for "reasonable provision for the individual's care or treatment … in the community." *See* § 51.20(1)(a)2.e.

¶25 But the circuit court did more than simply "parrot[] the statutory language." *See S.H.*, 393 Wis. 2d 511, ¶17. The court prefaced its discussion of the legal standards by noting that it "does rely heavily upon the opinions of treating medical providers," which this court interprets as an acknowledgement that it found Vicente's testimony and report to be credible evidence.

¶26 As to the first two elements for recommitment, the circuit court relied on Vicente's testimony in finding that Dennis suffers from schizophrenia, a condition that "grossly impairs his judgment, his behavior, as well as his capacity to recognize reality." The court linked these findings to the first element for recommitment, mental illness. The court also referred to Vicente's testimony in concluding that Dennis "is a proper subject for treatment; that treatment being necessary is medication as well as case management."

¶27 As to the element of dangerousness, the court made the following specific determinations:

- Dennis displays "a substantial probability that he is incapable of expressing the advantages, disadvantages, and alternatives of accepting medication or treatment";

- Dennis is "incapable of applying an understanding of [the advantages, disadvantages, and alternatives] in making an informed choice as to whether to accept or refuse such medications";

- Dennis "needs care and treatment in order to prevent further disability, and, if untreated, will lack the services necessary for his health or safety";

- Dennis "will suffer mental, emotional, or physical harm" if left untreated "that would result in loss of his ability to function independently in the community";

- Based on his treatment history, Dennis is substantially likely to "be a proper subject for commitment if treatment were withdrawn"; and

- "There's also no reasonable provision for his care in the community without the medication and case management that the Doctor is suggesting here."

As grounds supporting these determinations, the court discussed the crux of the evidence that, in its view, established dangerousness:

> As to the dangerousness, under the fifth standard, the Doctor had indicated through prior treatment that when [Dennis] goes off of his medications and is not involved in treatment, he decompensates. And, here, there was testimony that he was a danger to himself or others through his actions.
>
> [Dennis] himself admitted to the Doctor the same of going to other peoples' houses primarily resulting from his delusions that there are—that he owns the houses or should be inside the houses. There was testimony that, in the past, there were restraining orders that were taken out against him. Certainly, in today's climate, when one goes into a house or near a window of another person without their permission, there is inherent risk in doing so.

¶28 Though the circuit court did not specifically refer to these facts each time it found one of the elements of the fifth standard satisfied, its discussion of the behavior Dennis repeatedly engaged in on prior occasions when he stopped taking medication, along with Dennis's repeated assertions that he will not continue taking medication voluntarily, laid a sufficient factual predicate to establish the elements of dangerousness under the fifth standard.

¶29 Dennis analogizes this case to this court's decision in *Ozaukee County v. J.D.A.*, No. 2021AP1148, unpublished slip op. (WI App Dec. 15, 2021). Though this court has no obligation to address the case given its unpublished status, WIS. STAT. RULE 809.23(3)(b), *J.D.A.* is materially distinguishable. There, this court reversed recommitment and involuntary medication orders after determining that the circuit court had not complied with *D.J.W.*'s requirement of specific factual findings linked to the standard for dangerousness at issue.

13

Specifically, this court noted that the circuit court had "referenced only *a portion* of the applicable statutory language setting forth [the elements of the fifth standard] in making its findings." *J.D.A.*, No. 2021AP1148, ¶19. In addition, the circuit court in *J.D.A.* had not explained "how the evidence presented at the hearing fit into the statute" and did not make any findings on several aspects of the fifth standard because little or no evidence relevant to those aspects had been presented. *Id.*, ¶¶19-23. The evidentiary record in the present case, by contrast, addressed each portion of the fifth standard, and the court's discussion of the evidence sufficiently connected it to the elements under that standard.

¶30 For these reasons, this court rejects Dennis's challenge to the recommitment order. And because he does not raise any separate arguments regarding the involuntary medication order, that order is also affirmed.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.