# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.:           2019AP2277-FT

---

Complete Title of Case:

### IN THE MATTER OF THE MENTAL COMMITMENT OF S.H.:

### WINNEBAGO COUNTY,

####    PETITIONER-RESPONDENT,

####    V.

### S.H.,

####    RESPONDENT-APPELLANT.

---

Opinion Filed:        June 17, 2020
Submitted on Briefs:  March 11, 2020

---

JUDGES:         Reilly, P.J., Gundrum and Davis, JJ.
     Concurred:
     Dissented:

---

Appellant
ATTORNEYS:      On behalf of the respondent-appellant, the cause was submitted on the briefs of *Suzanne L. Hagopian*, assistant state public defender of Madison.

Respondent
ATTORNEYS:      On behalf of the petitioner-respondent, the cause was submitted on the brief of *Catherine B. Scherer*, assistant corporation counsel of Winnebago County.

**COURT OF APPEALS
DECISION
DATED AND FILED**

**June 17, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

| | |
|---|---|
| **Appeal No.** **2019AP2277-FT** | **Cir. Ct. No. 2019ME242** |
| **STATE OF WISCONSIN** | **IN COURT OF APPEALS** |

IN THE MATTER OF THE MENTAL COMMITMENT OF S.H.:

WINNEBAGO COUNTY,

    PETITIONER-RESPONDENT,

  V.

S.H.,

    RESPONDENT-APPELLANT.

APPEAL from orders of the circuit court for Winnebago County: BARBARA H. KEY, Judge. *Affirmed*.

Before Reilly, P.J., Gundrum and Davis, JJ.

¶1 DAVIS, J.[1] "Sarah"[2] appeals from an order extending her involuntary commitment and from an order for involuntary medication and treatment. *See* WIS. STAT. §§ 51.20(13)(g)1., 51.61(1)(g)4. The evidence supports the circuit court's conclusions that Sarah is mentally ill, is a proper subject for treatment, and would be the proper subject for commitment if treatment were withdrawn. *See* § 51.20(1)(a)1., (am). We therefore affirm.

## BACKGROUND

¶2 The appellate record does not indicate when Sarah was first subject to WIS. STAT. ch. 51 orders for involuntary commitment and involuntary medication and treatment. In May 2019, Winnebago County petitioned for a one-year extension of the most recent orders. The only witness at Sarah's extension hearing was her treating physician, Dr. Michael Vicente.[3]

¶3 Vicente testified that he has been treating Sarah since 2015. He meets with Sarah regularly and with Sarah's case manager "frequently." Vicente's most recent evaluation of Sarah was two weeks prior to the extension hearing. Vicente testified that Sarah has diagnosed paranoid schizophrenia, which manifests as a disorder of thought and perception. These faculties are "substantially" impaired when Sarah is not under treatment, "grossly" affecting her "judgment and capacity to recognize reality."

---

[1] This appeal was converted from a one judge to a three-judge appeal under WIS. STAT. § 809.41(3) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version.

[2] For ease of reading, and in keeping with the pseudonym used in the briefing, we refer to appellant S.H. as "Sarah."

[3] Other facts pertaining to Sarah's history of illness and treatment are set forth in an independent psychiatric examination report prepared at her request for her extension hearing. That report was not offered into evidence; consequently, we do not rely on its contents.

¶4      Vicente opined that Sarah would become a proper subject for commitment if treatment were withdrawn. This is because Sarah "does not believe she is mentally ill and she does not believe she needs treatment." As a result, there is a "very high likelihood" that Sarah would discontinue treatment without an extension of her orders. Vicente based these predictions on Sarah's "prior record when off commitment, [where] she has gone off medications which led to hospitalizations and further commitment."

¶5      On cross-examination, Vicente admitted that since April 2017 he has observed no paranoia in Sarah, save for one instance in July 2018. Sarah had "paranoid ideation" on that occasion caused by a previous change in medication, although those symptoms had improved by the appointment. This paranoia was evidenced by Sarah

> focus[ing] on an injury from a chiropractor from years ago. She was also talking about problems with her father in the past and about her supervisor that caused her stress in the past of which she brought a baseball bat to work so some of the old things that had been bothering her were resurfacing.

¶6      Vicente also recognized that in the recent past, Sarah has successfully managed her illness: she has been compliant with her medication since January 2017, and she has maintained stable housing and employment (Sarah is committed on an outpatient basis). On further questioning, however, Vicente again noted that Sarah has a history of coming off her medication and decompensating. He explained that "the medication is what is preventing her from decompensating" and that "[g]iven [her] history, [he did] not believe" Sarah "would ever have the ability to come off medication." Vicente further explained that Sarah has not evidenced any dangerous behavior under his care but that his one attempt to change her

medication, as discussed above, did lead to her "becoming more paranoid which has led to dangerous behaviors in the past."

¶7      The circuit court found that the County met the burden of proof for extending Sarah's commitment and treatment/medication orders.  The court was "not unsympathetic" to Sarah's argument that she not be subject to indefinite extension orders, noting "[H]ow long?  But, in terms of the medications, is it a lifetime order for medications?"  The court nonetheless found that "[t]he Doctor's testimony is such that, certainly, the burden of proof has been met here."  The court found it "clear from the testimony" that Sarah "does suffer from a mental illness … that she's a proper subject for treatment, that, if treatment were withdrawn, she would become a proper subject for commitment, and that the least restrictive placement is what's currently occurring which is on this outpatient basis."  After determining that Sarah was not competent to refuse medication, the court extended Sarah's involuntary commitment and involuntary treatment and medication orders. This appeal follows.

## DISCUSSION

*Legal Framework and Standard of Review for the Extension of an Involuntary Commitment*

¶8      A county seeking to initiate a WIS. STAT. ch. 51 involuntary commitment must prove by clear and convincing evidence that an individual is (1) mentally ill, (2) a proper subject for treatment, and (3) dangerous under one of the five standards of WIS. STAT. § 51.20(1)(a)2.a.-e. ***Portage Cty. v. J.W.K.***, 2019 WI 54, ¶17, 386 Wis. 2d 672, 927 N.W.2d 509; § 51.20(1)(a), (13)(e). Each of these "dangerousness" standards requires evidence of recent acts or omissions demonstrating that the individual is a danger to him or herself or to others. ***J.W.K.***,

386 Wis. 2d 672, ¶17; § 51.20(1)(a)2.a.-e. Thereafter, a court may extend the individual's commitment for up to one year. Sec. 51.20(13)(g)1. The extension requires proof of the same three elements, except that instead of proving dangerousness under § 51.20(1)(a)2.a.-e., the county may rely on the "alternative evidentiary path" of § 51.20(1)(am). *J.W.K.*, 386 Wis. 2d 672, ¶19; § 51.20(13)(g)3.

¶9 WISCONSIN STAT. § 51.20(1)(am) "recognizes that an individual receiving treatment may not have exhibited any recent overt acts or omissions demonstrating dangerousness because the treatment ameliorated such behavior." *J.W.K.*, 386 Wis. 2d 672, ¶19. Accordingly, dangerousness in extension proceedings "may be satisfied by a showing that there is a substantial likelihood, based on the subject individual's treatment record, that the individual would be a proper subject for commitment if treatment were withdrawn." Sec. 51.20(1)(am). "It is not enough that the individual was at one point a proper subject for commitment." *J.W.K.*, 386 Wis. 2d 672, ¶24. Thus, "[e]ach extension hearing requires proof of *current* dangerousness." *Id.*, ¶24 (alteration in original). Notably, this "standard is not more or less onerous" than the standard for initial commitment; "the constitutional mandate that [a] County prove an individual is both mentally ill and dangerous by clear and convincing evidence remains unaltered." *Id.* The aim of § 51.20(1)(am) is simply

> to avoid the 'revolving door' phenomena whereby there must be proof of a recent overt act to extend the commitment but because the patient was still under treatment, no overt acts occurred and the patient was released from treatment only to commit a dangerous act and be recommitted … [in] a vicious circle of treatment, release, overt act, recommitment.

*State v. W.R.B.*, 140 Wis. 2d 347, 351, 411 N.W.2d 142 (Ct. App. 1987).

¶10    Review of an extension order presents a mixed question of fact and law. ***Waukesha Cty. v. J.W.J.***, 2017 WI 57, ¶15, 375 Wis. 2d 542, 895 N.W.2d 783. We uphold the court's findings of fact unless clearly erroneous, but we review de novo whether those facts satisfy the statutory standard. ***Id.***

*The Circuit Court Did Not Err in Finding that the County Met its Burden for Extending Sarah's Commitment and Treatment/Medication Orders*

¶11    Although Sarah appeals from two orders—for involuntary commitment and for involuntary medication and treatment—she does not present any argument relating to the latter order.[4] Therefore, we affirm without addressing the medication and treatment order and turn to the order for involuntary commitment. *See **State v. Pettit***, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App 1992) (the appellate court "may decline to review issues inadequately briefed"). Sarah does not dispute that the County met its burden of showing that she is mentally ill and a proper subject for treatment. Sarah raises two challenges, however, to the court's finding of dangerousness under WIS. STAT. § 51.20(1)(am).

¶12    Sarah first argues that as a matter of law, the County was required to "link" a finding of dangerousness under WIS. STAT. § 51.20(1)(am) "back to at least one of the statutory criteria in … § 51.20(1)(a)2.a.-d."[5] As Sarah would have it, the County cannot prove dangerousness unless it "specif[ies] or elaborat[es] on which

---

[4] Following commitment proceedings, a county seeking to administer involuntary medication or treatment must prove by clear and convincing evidence that the individual is incompetent to refuse medication or treatment, pursuant to WIS. STAT. § 51.61(1)(g)4. ***Outagamie Cty. v. Melanie L.***, 2013 WI 67, ¶37, 349 Wis. 2d 148, 833 N.W.2d 607.

[5] The County did not petition to extend Sarah's commitment under WIS. STAT § 51.20(1)(a)2.e., the fifth dangerousness criterion, for which there are separate pleading requirements. *See* § 51.20(10)(cm).

type of dangerous acts, omissions, or behaviors she would engage in" if treatment were withdrawn, with reference to these statutory standards. Sarah argues that the County's failure to do so constitutes reversible error.

¶13     At least up to a point, Sarah's position has merit. A medical expert in a WIS. STAT. ch. 51 proceeding must "link" his or her testimony "back to the standards in the statute," such that the expert's misstatement of that standard, or the lack of any evidence supporting a legal conclusion, will render the testimony insufficient. *Outagamie Cty. v. Melanie L.*, 2013 WI 67, ¶¶94-97, 349 Wis. 2d 148, 833 N.W.2d 607; *see also Marathon Cty. v. D.K.*, 2020 WI 8, ¶¶53-54, 390 Wis. 2d 50, 937 N.W.2d 901 (applying these principles to expert testimony in an initial commitment hearing). It is also true that proof of the ultimate finding of fact under WIS. STAT. § 51.20(1)(am)—"a substantial likelihood … that the individual would be a proper subject for commitment if treatment were withdrawn"—necessarily requires proof of a substantial likelihood of dangerousness, as defined under § 51.20(1)(a)2.a.-e. But neither the statute nor the applicable case law requires an expert or circuit court to speculate on the precise course of an individual's impending decompensation by identifying specific *future* dangerous acts or omissions the individual might theoretically undertake without treatment. Sarah is incorrect to the extent she argues as much. Dangerousness in an extension proceeding can and often must be based on the individual's precommitment

behavior, coupled with an expert's informed opinions and predictions (provided, of course, that there is a proper foundation for the latter).[6]

¶14    Nonetheless, there is no question that both the County and the court could have done more to address dangerousness with reference to the statutory standards for initial commitment. Indeed, after the parties submitted briefing in this case, our supreme court clarified that "*going forward* circuit courts in recommitment proceedings are to make specific factual findings with reference to the subdivision paragraph of [WIS. STAT.] § 51.20(1)(a)2. on which the recommitment is based." *Langlade Cty. v. D.J.W.*, 2020 WI 41, ¶¶40-41, 391 Wis. 2d. 231, 942 N.W.2d 277 (emphasis added). That the circuit court did not make such findings here cannot compel reversal, however, since Sarah's extension order predates *D.J.W.* And since this portion of *D.J.W.* is inapplicable, we can assume that the circuit court implicitly accepted Vicente's conclusions (the court referenced and appeared to rely upon his unchallenged testimony). *See State v. Martwick*, 2000 WI 5, ¶31, 231 Wis. 2d 801, 604 N.W.2d 552 ("[I]f a circuit court fails to make a finding that exists in the record, an appellate court can assume that the circuit court determined the fact in a manner that supports the circuit court's ultimate decision.").

---

[6] That foundation is generally best established by virtue of a history provided by the subject's regular treating physician, particularly where, as here, evidence of dangerous postcommitment behavior is lacking. In that regard, we find persuasive the discussion in the recently authored but unpublished decision *Jefferson County v. M.P.*, No. 2019AP2229-FT, unpublished slip op. (WI App Mar. 5, 2020). In *M.P.* this court dispelled the notion that past events could never form the basis for recommitment, noting that "[t]his argument appears to rest on an unreasonable assumption, namely, that courts will fail to properly assess the nature and timing of dangerous statements or conduct alleged to have pre-dated the original commitment." *Id.*, ¶16. On the other hand, "it could be a winning argument against recommitment that dangerous statements or conduct are old enough, weak enough, or otherwise insufficient to support clear and convincing evidence under the substantial likelihood of dangerousness test." *Id.* Thus, the appropriate inquiry involves a fact-intensive weighing of the evidence so as to arrive at an educated conclusion as to the likelihood of reoccurring dangerousness.

¶15     The circuit court thus found, albeit indirectly, that Sarah does not believe she needs medication and has "gone off medications" when not involuntarily committed, leading to "hospitalizations and further commitment." This fact, along with Vicente's unrebutted discussion of his history treating Sarah (including her postcommitment paranoid ideations related to a precommitment incident in which she brought a baseball bat to work) support a finding that Sarah engages in dangerous behavior when not on medication. In addition, the court necessarily credited Vicente's prediction that there is a "very high likelihood" that Sarah would again discontinue medication without a commitment order. Therefore, Vicente's testimony "connected the dots," supporting the court's final determination that Sarah would repeat this cycle (end of commitment/going off medication/dangerous behavior/recommitment) if her commitment order were not extended. We cannot say that these factual findings are clearly erroneous. *See J.W.J.*, 375 Wis. 2d 542, ¶15; *see also Estate of Becker*, 76 Wis. 2d 336, 347, 251 N.W.2d 431 (1977) ("[O]n appeal we examine the record, not for facts to support a finding the trial court did not make or could have made, but for facts to support the finding the trial court did make." (citation omitted)).

¶16     We further hold that as a matter of law, these factual findings satisfy the "dangerousness" requirement of WIS. STAT. § 51.20(1)(am). *See J.W.J.*, 375 Wis. 2d 542, ¶15; *D.J.W.*, 391 Wis. 2d 231, ¶47. Pursuant to § 51.20(1)(a)2.c., an individual is dangerous where he or she "[e]vidences such impaired judgment … that there is a substantial probability of physical impairment or injury to himself or herself or other individuals."[7] Sarah does not believe that she

---

[7] The complete standard under WIS. STAT. § 51.20(1)(a)2.c. requires "evidence of a pattern of recent acts or omissions," but such showing is inapplicable in an extension proceeding under § 51.20(1)(am). *Portage Cty. v. J.W.K.*, 2019 WI 54, ¶19, 386 Wis. 2d 672, 927 N.W.2d 509.

is mentally ill; when given the choice she has repeatedly opted to discontinue medication, leading to dangerous (albeit unspecified) behavior requiring recommitment. Her history thus supports the court's ultimate conclusion that Sarah "would be a proper subject for commitment if treatment were withdrawn." *See* § 51.20(1)(am).[8]

¶17    As guidance to litigants going forward, we note that we have arrived at this result despite the County's failure during its case in chief to present sufficient evidence of dangerousness. At the extension hearing, the County addressed dangerousness by simply eliciting from Vicente an affirmative answer as to whether "if treatment were currently withdrawn, [Sarah] would [] become a proper subject for commitment." This method of proof would be inadequate even before *D.J.W.*'s requirement that the circuit court make specific factual findings from the record. *See D.J.W.*, 391 Wis. 2d 231, ¶40. The County's appellate brief would have us treat the issue in a similarly cursory fashion, asking us to "assume that [Sarah's] behavior while 'off commitment' was dangerous because she eventually became the subject of an involuntary commitment." We take this opportunity to point out that reliance on assumptions concerning a recommitment at some unidentified point in the past, and conclusory opinions parroting the statutory language without actually discussing dangerousness, are insufficient to prove dangerousness in an extension hearing. In the course of cross-examination, however, Vicente brought up a specific prior instance of dangerous behavior that was directly tied to postcommitment

---

[8] In that regard, this case is distinguishable from *D.J.W.*; there the evidence did not satisfy the statutory standard because it only demonstrated that the respondent would be unable to care for himself if treatment were withdrawn. *Langlade Cty. v. D.J.W.*, 2020 WI 41, ¶53, 391 Wis. 2d. 231, 942 N.W.2d 277 ("Inability to care for oneself does not equate with a 'substantial probability' that 'death, serious physical injury, serious physical debilitation, or serious physical disease' would ensue if treatment were withdrawn."). Here, Vicente discussed a recent decompensation, caused by Sarah stopping a change in medication that was linked to a prior incident involving dangerous behavior.

paranoid ideations relating to the same incident, and that resurfaced following a change in medication. This provided the necessary link between past dangerousness and the substantial likelihood of reoccurrence of such behavior absent an extension order—particularly in light of Vicente's oft-repeated testimony that Sarah is highly likely to stop taking her medication without that order and in the absence of any rebuttal testimony.[9]

¶18    This court, like the circuit court, is "not unsympathetic" to Sarah's desire to be free from repeated orders for involuntary commitment and medication/treatment.  The undisputed evidence, however, establishes that these orders prevent decompensation and the reoccurrence of dangerous behavior. Although we live in a time where such behavior can be treated through outpatient methods—allowing those with mental illness to live fulfilling and productive lives, as Sarah appears to be doing here—such treatment is not without its burdens, and the potential inability to escape those burdens is a legitimate concern.  But the "revolving door" of treatment, decompensation, and commitment articulated by past decisions is equally if not more concerning and has led to the precedent to which we are bound.  *See* ***W.R.B.***, 140 Wis. 2d at 351.  The "how long" question rhetorically posed by the circuit court is one that we are also unable to answer on this record, and we do not mean to suggest that there is no set of circumstances which could lead to a different outcome in a future proceeding.  As did the circuit

---

[9]   This decision stands in contrast to ***Winnebago County v. L.F.-G.***, No.2019AP2010, ¶¶4, 7, unpublished slip op. (WI App May 20, 2020), where we reversed an extension order based on facts that, with one crucial difference, were very similar to those here:  the (same) county relied on the unchallenged testimony of (the same) Michael Vicente, who testified that the respondent would discontinue treatment without an extension order and become "acutely psychotic."  In ***L.F.-G.***, however, there was no evidence of any dangerous behavior, pre or postcommitment, indicating current dangerousness.  *Id.*, ¶¶5, 7; *see* ***J.W.K.***, 386 Wis. 2d 672, ¶24.  Rather, we were simply asked to assume the dangerousness element from the fact of prior commitment orders.  As explained in that opinion, even prior to ***D.J.W.***, this would be improper.

court, however, we can say that extension of Sarah's commitment is appropriate in this instance, given the unrebutted opinion from her treating physician that Sarah has gone through and will likely repeat the "revolving door" cycle without a commitment order. The circuit court correctly concluded that Sarah is a proper subject for commitment if treatment is withdrawn and that an extension should be granted pursuant to the "dangerousness" standard of WIS. STAT. § 51.20(1)(am). We affirm both orders.

*By the Court.*—Orders affirmed.