COURT OF APPEALS
DECISION
DATED AND FILED

February 28, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1811-FT**

STATE OF WISCONSIN

Cir. Ct. No. 2020ME16

IN COURT OF APPEALS
DISTRICT III

---

IN THE MATTER OF THE MENTAL COMMITMENT OF B. S.:

BURNETT COUNTY,

    PETITIONER-RESPONDENT,

  V.

B. S.,

    RESPONDENT-APPELLANT.

---

APPEAL from an order of the circuit court for Burnett County: MELISSIA R. MOGEN, Judge. *Reversed and cause remanded with directions*.

¶1 HRUZ, J.[1] Brian[2] appeals an order extending his involuntary commitment pursuant to WIS. STAT. § 51.20. Brian argues that Burnett County

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2021-22). This is an expedited appeal under WIS. STAT. RULE 809.17 (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

failed to provide sufficient evidence to prove that he is currently dangerous under § 51.20(1)(a)2. Brian contends that while the County presented the testimony and report of a psychiatrist at the extension hearing, the psychiatrist provided only generalized statements that were insufficient to meet the County's burden of proving his dangerousness by clear and convincing evidence.

¶2　We agree. In particular, we note that the record on appeal is devoid of sufficient factual support for the expert's opinions regarding Brian's current dangerousness and the resulting court order relying upon them. The law requires a fuller record—including sufficient explanations and connection to other facts in evidence—in order to prove, by clear and convincing evidence, that someone currently meets the statutory criteria necessary to continue involuntarily committing that individual. Accordingly, we reverse the order extending Brian's involuntary commitment.

¶3　After the circuit court entered the order extending Brian's commitment, it entered an order for involuntary medication and treatment, following a separate hearing. An involuntary medication order cannot exist without a valid commitment order. *See* WIS. STAT. § 51.61(1)(g)3. Because we have reversed the order extending Brian's commitment, we remand this matter to the circuit court with directions to vacate the associated involuntary medication order.

---

[2] For ease of reading, we refer to the appellant in this confidential matter using a pseudonym, rather than his initials.

**BACKGROUND**

¶4      In September 2020, Brian, then sixty-six years old, was emergently detained pursuant to WIS. STAT. § 51.15 after an incident in which he threatened to kill a pharmacist because he believed the pharmacist was poisoning him.  After a probable cause hearing and a final hearing—in which Brian was found to be mentally ill, dangerous to himself or others, and a proper subject for treatment—Brian was involuntarily committed at a locked inpatient facility for six months.  Brian's involuntary commitment was extended for three twelve-month-periods following recommitment hearings in March 2021, 2022, and 2023.  The recommitment order entered in March 2023 is at issue in this appeal.

¶5      Shortly prior to the 2023 recommitment hearing, Brian was examined by a physician, Neil Brahmbhatt, and a psychiatrist, Gail Tasch.  Due to an illness, Brahmbhatt was unable to testify at the hearing, and his report was not submitted into evidence.  The County decided to proceed with the recommitment hearing with Tasch as its only witness.

¶6      Doctor Tasch testified that she examined Brian and diagnosed him with schizophrenia, which "affect[s] … his thought and mood."  Tasch stated that this condition is treatable but also that Brian "does not respond to medicine very well."  She explained that Brian was on a "fairly high dose" of medicine, but, despite that treatment, he continued to suffer from delusional thinking, particularly his belief that God had cured his schizophrenia.  Further, Tasch said that Brian did not "respond to the medication regimen" and that some people "don't respond at all" or that "[s]ometimes there's a partial response" to medication.  Tasch summarily stated that Brian "continue[s] to have psychotic thinking" and, consequently, "present[s] a danger to himself and possibly others."

3

¶7 When asked if Brian would be a proper subject for commitment if treatment were withdrawn, Dr. Tasch answered in the affirmative and explained that she reached this conclusion because "it is likely he would develop very prominent withdrawal symptoms from the medication he's taking…. [T]he biggest danger for him really is withdrawal because he doesn't seem to respond well to antipsychotic medication." Tasch also noted, however, that Brian had previously "been tapered off a medication … very slowly and appropriately" and that Brian "did fine without that medicine." Tasch stated that Brian needs the "supervision and structure and the support" he receives at his inpatient facility in order to satisfy his basic needs for nourishment, medical care, shelter, safety, and treatment. Tasch did not elaborate on this latter opinion, nor did she provide any factual basis for it.

¶8 In its oral ruling, the circuit court noted that Brian continued to "present and show indications of still having his mental illness even with the medication." The court then found that Brian was "a proper person for treatment, … the standard has been met as to dangerousness due to [Dr. Tasch's] testimony, and that [Brian is dangerous pursuant to WIS. STAT. § 51.20(1)(a)2.d.],[3] … even though he's not exhibiting any recent threats or

___

[3] WISCONSIN STAT. § 51.20(1)(a)2.d. provides that a person is dangerous if he or she evidences

> behavior manifested by recent acts or omissions that, due to mental illness, he or she is unable to satisfy basic needs for nourishment, medical care, shelter or safety without prompt and adequate treatment so that a substantial probability exists that death, serious physical injury, serious physical debilitation, or serious physical disease will imminently ensue unless the individual receives prompt and adequate treatment for this mental illness.

attempts of threats or physical harm or acts, etcetera." Specifically, the court stated that Brian was "unable to satisfy his basic needs for his nourishment and his medical care, and his other care."

¶9 The circuit court also found that the dangerousness standard in WIS. STAT. § 51.20(1)(a)2.c.[4] "could be applicable as well, due to [Brian's] mental illness and impaired judgment, and the pattern of conduct and incidents that had occurred, which did require him to be under the commitment to begin with." The court then summarily concluded that Brian evidenced "a substantial probability of harm to himself and to others based upon those [prior] incidents if medication" and treatment were withdrawn. The court then ordered that Brian's commitment be extended for twelve months. Brian now appeals.

## DISCUSSION

¶10 Brian argues that the circuit court failed to make specific factual findings to support the legal conclusion that he is currently dangerous under WIS. STAT. § 51.20(1)(a)2. Brian also argues that there was insufficient evidence for the court to find that he is a proper subject for treatment.[5]

¶11 Whether the County has met its burden of proof to support extending Brian's commitment pursuant to WIS. STAT. § 51.20 is a mixed question of law and fact. *See **Langlade County v. D.J.W.**, 2020 WI 41, ¶¶24-25, 391 Wis. 2d 231,

---

[4] WISCONSIN STAT. § 51.20(1)(a)2.c. provides that a person is dangerous if he or she evidences "such impaired judgment, manifested by evidence of a pattern of recent acts or omissions, that there is a substantial probability of physical impairment or injury to himself or herself or other individuals."

[5] Brian does not contest on appeal that he is mentally ill.

942 N.W.2d 277. "[W]e will uphold a circuit court's findings of fact unless they are clearly erroneous. A finding of fact is clearly erroneous if it is against the great weight and clear preponderance of the evidence." *Id.*, ¶24. "Whether the facts satisfy the statutory standard is a question of law that we review de novo." *Waukesha County v. J.W.J.*, 2017 WI 57, ¶15, 375 Wis. 2d 542, 895 N.W.2d 783.

¶12     To be subjected to a WIS. STAT. ch. 51 involuntary commitment, three elements must be proven by clear and convincing evidence: "the subject individual must be (1) mentally ill; (2) a proper subject for treatment; and (3) dangerous to themselves or others." *D.J.W.*, 391 Wis. 2d 231, ¶29. WISCONSIN STAT. § 51.20(1)(a)2. provides five standards for proving that a person is dangerous in an initial involuntary commitment proceeding. Sec. 51.20(1)(a)2.a.-e.

¶13     "To prevail in a recommitment proceeding, [a county] must prove the same elements necessary for the initial commitment by clear and convincing evidence." *D.J.W.*, 391 Wis. 2d 231, ¶31. Notably,

> [t]he dangerousness standard is not more or less onerous during an extension proceeding; the constitutional mandate that [a county] prove an individual is both mentally ill and dangerous by clear and convincing evidence remains unaltered. Each extension hearing requires proof of *current* dangerousness. It is not enough that the individual was at one point a proper subject for commitment.

*Portage County v. J.W.K.*, 2019 WI 54, ¶24, 386 Wis. 2d 672, 927 N.W.2d 509. In a recommitment hearing, a county may prove dangerousness using any of the five means set forth in WIS. STAT. § 51.20(1)(a)2.a.-e. or, in conjunction with those standards, a county can establish dangerousness by "showing that there is a substantial likelihood, based on the subject individual's treatment record, that the

6

individual would be a proper subject for commitment if treatment were withdrawn." *See* § 51.20(1)(am). "The alternate avenue of showing dangerousness under paragraph (am) does not change the elements or quantum of proof required. It merely acknowledges that an individual may still be dangerous despite the absence of recent acts, omissions, or behaviors exhibiting dangerousness outlined in § 51.20(1)(a)2.a-e." *J.W.K.*, 386 Wis. 2d 672, ¶24.

¶14 In commitment and recommitment hearings, circuit courts must "make specific factual findings with reference to the" standard of dangerousness on which the commitment is based. *D.J.W.*, 391 Wis. 2d 231, ¶3; *see also Trempealeau County v. C.B.O.*, Nos. 2021AP1955, 2022AP102, unpublished slip op. ¶28 (WI App Aug. 30, 2022).[6] The purposes of this requirement are to increase protection for patients and to facilitate meaningful appellate review. *D.J.W.*, 391 Wis. 2d 231, ¶¶43-44.

¶15 Brian argues that the circuit court failed to make specific factual findings as to the standard of dangerousness upon which his recommitment was based, contrary to the requirement stated in *D.J.W.* Brian asserts that the court's findings were "minimal—if not entirely absent" and that the court failed to explain how its findings related to the statutory standards of dangerousness.

¶16 Regarding the standard of dangerousness set forth in WIS. STAT. § 51.20(1)(a)2.d., the circuit court stated that Brian "does continue to present and show indications of still having his mental illness even with the medication and the services due to the hyper-religious states that he is in." The court also stated

---

[6] Unpublished opinions authored by a single judge and issued on or after July 1, 2009, may be cited for their persuasive value. *See* WIS. STAT. RULE 809.23(3)(b).

that "[d]ue to his mental illness, [Brian] is unable to satisfy his basic needs for his nourishment and his medical care, and his other care" and that "there would be a substantial probability" of Brian's "death, serious injury to himself, physical debilitation, or other serious physical disease … unless he continues to receive this proper treatment and medication."

¶17    Regarding the standard of dangerousness in WIS. STAT. § 51.20(1)(a)2.c., the circuit court stated that "based upon the collateral sources and the testimony of the doctor," this standard "could be applicable … due to [Brian's] mental illness and impaired judgment, and the pattern of conduct and incidents that had occurred, which did require him to be under the commitment to begin with." The court further stated that there "would be a substantial probability of harm to himself and[/]or to others based upon those incidents if medication and other treatments would be withdrawn."

¶18    We note that the circuit court's specific factual findings regarding these standards of dangerousness are sparse and do little beyond merely identifying the standards of dangerousness themselves. We question whether these findings provide any clarity to Brian as to the underlying bases for his recommitment and whether the findings are helpful upon judicial review. *See* ***D.J.W.***, 391 Wis. 2d 231, ¶¶42-44. However, as will be discussed below, we ultimately reverse on the ground that, in all events, there was insufficient evidence at the recommitment hearing for the court to find that Brian was currently dangerous. Consequently, we need not address whether the court's findings were sufficient to satisfy ***D.J.W.***

¶19    We now turn to the sufficiency of the evidence in the record in this particular recommitment hearing. Brian argues that the evidence at the hearing

was insufficient to demonstrate that he is dangerous under either WIS. STAT. § 51.20(1)(a)2.c. or d.[7]  First addressing § 51.20(1)(a)2.d., on which the circuit court primarily relied, Brian argues that Dr. Tasch never explained how his mental illness prevented him from caring for himself or why she opined that Brian was unable to provide for his basic needs.  Further, Brian asserts that the County presented no other evidence showing that he was unable to care for himself or provide for his basic needs, or showing how or why he would likely suffer serious harm as a result of inability to provide for his own basic needs.  We agree.

¶20     Doctor Tasch testified that Brian is dangerous under WIS. STAT. § 51.20(1)(a)2.d. only because he needs the "supervision and structure and the support" that he receives at his inpatient facility.  She provided no explanation as to the supervision, structure, or support Brian receives at his facility, why he needs this supervision, structure and support, nor did she explain how Brian's mental illness plays a role in these "needs."  Quite simply, on appellate review, we are left to speculate on these matters.  "[I]t is insufficient to present a general discussion of [Brian's] mental illness without presenting testimony as to why [his] particular acts or omissions were dangerous."  *See Trempealeau Cnty. Dep't of Soc. Servs. v. T.M.M.*, No. 2021AP100, unpublished slip op. ¶¶11-12 (WI App Nov. 12, 2021).  Further, without an explanation as to what Brian's "needs" are or how he is benefiting from the supervision, structure, and support he is receiving, it is

---

[7] Brian additionally argues that the evidence was insufficient to show that he is a proper subject for treatment.  Because we reverse on the ground that the evidence was insufficient to show that Brian is dangerous, we need not address this additional argument.  *See Turner v. Taylor*, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (appellate courts need not address every issue raised by the parties when one is dispositive).

unclear as to whether the supervision, structure, and support are necessitated by Brian's mental illness, and how they are a part of his rehabilitative treatment.

¶21   Doctor Tasch testified that the only medical danger Brian would likely experience would be caused by withdrawal symptoms if he stopped taking the antipsychotic medication he is prescribed.   We note, however, that Tasch also testified that Brian had been "tapered off" one of his prior medications "very slowly" and that he "did fine without that medicine."   But more importantly, Tasch did not testify regarding the symptoms Brian would experience if his medication were stopped, or that the inpatient facility would be unable to similarly slowly taper him off of his current medication.   Further, Tasch also testified that a court order for involuntary medication was not necessary and that the facility planned to "wean" Brian off of his medication.   In all, we conclude there is insufficient evidence in the record to prove, by clear and convincing evidence, that Brian is dangerous under WIS. STAT. § 51.20(1)(a)2.d.

¶22   Brian also argues that there was insufficient evidence to find him dangerous under WIS. STAT. § 51.20(1)(a)2.c.   Again, we agree.   Brian notes that the only evidence presented at the hearing relating to this standard was Dr. Tasch's statement that he "continue[s] to have psychotic thinking."   While Tasch testified that Brian continued to believe that "God has cured him of his schizophrenia," Tasch provided no other testimony as to how Brian continued to suffer from psychotic thinking.   Tasch did not explain how Brian's psychotic thinking or belief that he was cured by God impaired his judgment beyond him professing that belief, nor did she provide any other examples of Brian suffering from impaired judgment such that he presented a substantial probability of harm to himself or others.   Again, "it is insufficient to present a general discussion of [Brian's]

mental illness without presenting testimony as to why [his] particular acts or omissions were dangerous." *See **T.M.M.**, No. 2021AP100, ¶¶11-12.

¶23 The circuit court stated that Brian met this standard of dangerousness based on "collateral sources" and "the pattern of conduct and incidents that had occurred, which did require him to be under the commitment to begin with." It is unclear what "collateral sources" the court was relying on, as the only evidence presented to the court in this recommitment proceeding was the testimony and report of Dr. Tasch. As stated above, Tasch's report and testimony do not provide a factual basis for the court to find that Brian was dangerous. Further, the court itself noted that Brian was "not exhibiting any recent threats or attempts of threats or physical harm or acts, etcetera." To the extent that the court relied on the conduct for which Brian was committed in the first place, this reliance is impermissible. *See **Winnebago County v. S.H.**, 2020 WI App 46, ¶17, 393 Wis. 2d 511, 947 N.W.2d 761 ("[R]eliance on assumptions concerning a recommitment at some unidentified point in the past, and conclusory opinions parroting the statutory language without actually discussing dangerousness, are insufficient to prove dangerousness in an extension hearing.").

¶24 The County's only attempt on appeal to overcome the foregoing record insufficiencies is to argue that the circuit court can make reasonable inferences and that it was reasonable to infer that due to his schizophrenia, Brian would quit taking his medication and would not seek medical care if not committed. We agree that the court may make reasonable inferences based upon the evidence. *See **Outagamie County v. Melanie L.**, 2013 WI 67, ¶38, 349 Wis. 2d 148, 833 N.W.2d 607. However, the court cannot simply infer that a standard of dangerousness is met. The County must still meet its burden to show by *clear and convincing evidence* that a patient is currently dangerous under one

of the standards enumerated in WIS. STAT. § 51.20(1)(a)2., possibly in conjunction with (1)(am). *See **D.J.W.***, 391 Wis. 2d 231, ¶23. While the County provided generalized statements from Dr. Tasch, the County failed to meet its burden.[8]

¶25    We pause to note that in both of Brian's prior commitment extension hearings, the County presented precisely the type of evidence necessary to fill the void discussed above. It appears that this evidence presented at the prior hearings came from Dr. Brahmbhatt, who, again, was scheduled to appear at the hearing leading to the current order under review but then was unable to do so. Be that as it may, as a reviewing court, we can only rely upon what is in the relevant portion of the record. And while evidence from the prior hearings is in the current record, under WIS. STAT. ch. 51, "dangerousness 'cannot be assumed from [a] prior commitment order,'" "each recommitment must be based on 'current, dual findings of mental illness and dangerousness.'" ***Marathon County v. T.R.H.***, No. 2022AP1394, unpublished slip op. ¶28 (WI App Mar. 14, 2023), *review denied* (WI June 22, 2023) (alteration in original; citation omitted). "It is not enough that the individual was at one point a proper subject for commitment. The County must prove the individual '*is* dangerous.'" ***J.W.K.***, 386 Wis. 2d 672, ¶24 (citation omitted).

¶26    Seeing no other evidence to support the conclusion that Brian was dangerous under one of the statutory standards, we reverse the March 2023 order extending Brian's involuntary commitment. Because there cannot be an

---

[8] We are aware that the County's physician, Dr. Neil Brahmbhatt, had an unforeseen emergency the day of the hearing and was unable to testify. However, this unforeseen circumstance does not excuse the County from meeting its burden of proving dangerousness by clear and convincing evidence.

involuntary medication order without an underlying involuntary commitment, we remand this matter to the circuit court with directions to vacate the associated involuntary medication order.[9]  *See* WIS. STAT. § 51.61(1)(g)3.

*By the Court.*—Order reversed and cause remanded with directions.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[9] We note that if the County believes there is a current necessity to seek a new emergency detention for Brian, it can do so.  *See* WIS. STAT. § 51.15.