**COURT OF APPEALS
DECISION
DATED AND FILED**

**May 1, 2024**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.     2024AP146-FT**

**STATE OF WISCONSIN**

Cir. Ct. No.  2015ME103

**IN COURT OF APPEALS
DISTRICT II**

IN THE MATTER OF THE MENTAL COMMITMENT OF P.Z.

RACINE COUNTY,

   PETITIONER-RESPONDENT,

 V.

P.Z.,

   RESPONDENT-APPELLANT.

        APPEAL from orders of the circuit court for Racine County: WYNNE P. LAUFENBERG, Judge. *Affirmed*.

¶1   LAZAR, J.[1] Paul[2] appeals orders extending his involuntary commitment pursuant to WIS. STAT. § 51.20 and providing for his involuntary medication and treatment pursuant to WIS. STAT. § 51.61(1)(g)3.  He argues that Racine County failed to meet its burden to prove that he is currently dangerous under § 51.20(1)(a)2.  This court concludes that the County introduced sufficient evidence via testimony of a connection between Paul's past acts and predicted dangerousness if treatment were withdrawn and affirms the orders.

¶2   In August 2015, Paul was emergently detained after he violently threw objects in his mother's house (where he lived then and continues to live now), which caused his mother to fear for her safety and to lock herself in a room to avoid injury.  Paul was subsequently committed under WIS. STAT. § 51.20 and subject to an order for involuntary medication and treatment.  The commitment and medication orders were extended annually from 2016-22.[3]  Each year, Dr. William J. Bjerregaard was the psychiatrist appointed to evaluate Paul.

¶3   The County filed the petition for recommitment giving rise to this appeal on February 28, 2023, and the circuit court conducted a contested hearing on the petition on April 18, 2023.  Bjerregaard, who had again been appointed to examine Paul, was the County's first witness.  He testified that Paul suffers from chronic paranoid schizophrenia and hallucinations and that "he has essentially no

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2021-22).  This is an expedited appeal under WIS. STAT. RULE 809.17 (2021-22).  All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] In order to protect his confidentiality, this court refers to the subject individual by a pseudonym.  *See* WIS. STAT. RULE 809.19(1)(g).

[3] Paul stipulated to the recommitments in 2017, 2018, and 2019.

insight and his judgment is very poor." He agreed that based on Paul's treatment record, there was a "substantial likelihood that he would be a proper subject for commitment if his treatment were withdrawn" because Paul "has a history of being off medication and becoming physically violent."

¶4 He noted some instances of such violent behavior: Paul broke his brother's ankle immediately before his original commitment and had "disruptive violent behavior when in the hospital, either the emergency room or inpatient, when he's not on medication." Bjerregaard also reported that Paul refused "to get properly clothed" when he was originally committed, "walking out of his household naked when there were young children present." In interviews with Bjerregaard, Paul reported having been previously hospitalized at "both Winnebago and Mendota" as well as at St. Luke's Hospital, but Bjerregaard said Paul had not been hospitalized since being on court-ordered antipsychotic medication. Paul also denied to Bjerregaard "ever being violent towards anyone," including threatening his mother and breaking his brother's ankle, despite those instances being "documented in many places."

¶5 Bjerregaard testified unequivocally that Paul does not believe he has any mental illness and that Paul told him he would not take medication or seek other treatment without a court order. Paul has been unemployed for at least eight years and has been recommended to receive social security disability payments, but he refuses to pursue social security "because he believes he does not have a mental illness." On cross-examination, Bjerregaard stated that he was not surprised that Paul had "maintained psychiatric stability" throughout the current commitment order as reflected in his Human Services Department recommitment memo, explaining that he would expect such stability because "he's been receiving his court-ordered intramuscular antipsychotic medication."

¶6 Angela Townsend, a case manager with the Racine County Human Services Department, and author of the aforementioned memo, also testified for the County. She too stated that Paul was "aggressive" in 2015 "when he didn't take his medication," elaborating that his threatening behavior caused his mother and another family member to lock themselves in a room out of fear. She further testified that Paul had been subject to multiple capias warrants over the course of his commitment for missing an injection and missing court evaluations.[4] Finally, she testified that Paul "reported to [her] directly that he does not have a mental illness and that if it wasn't for the court order, he would not take medications or see his outpatient provider."

¶7 Paul neither testified nor presented any other witnesses on his behalf. The circuit court found that Paul has "a serious mental health disorder" that "is treatable … with psychotropic medication." It also found "if the treatment were withdrawn that [Paul] would be a proper subject for commitment and … [a] danger to others based on his treatment record."[5] The court purportedly based this finding on Paul's "prior actions within his home towards loved ones, as well as … his aggressive behaviors and violent behaviors when he's had to be hospitalized when he has been off his medications." It also gave significant weight to the testimony from both Bjerregaard and Townsend that Paul "has utterly no insight into his mental health situation," refusing to believe that he suffers from mental illness and needs medications and "even … refus[ing] to seek some kind of

---

[4] The court record indicates that the most recent capias was issued in 2020.

[5] The court's written order indicates that Paul was dangerous under both standards Wis. Stat. § 51.20(1)(a)2.b. (physical harm to others) and 2.d. (substantial probability of death or serious physical issue). The parties agree that the latter standard was not addressed in the court's oral decision and was likely checked as a result of clerical error.

income for himself" because "he maintains that he does not have a mental health disorder," which is belied by his "treatment record … [which] proves differently."

¶8 Paul appeals the orders subjecting him to another twelve-month commitment and involuntary medication and treatment. His argument is that all of the evidence of dangerousness relied upon by the County relates to events that occurred approximately eight years ago and is thus insufficient to show *current* dangerousness as required by WIS. STAT. § 51.20.

¶9 *Winnebago County v. S.H.*, 2020 WI App 46, 393 Wis. 2d 511, 947 N.W.2d 761, a published opinion issued by this court and cited in Paul's brief, sets forth the legal framework and standard of review for a recommitment such as Paul's. A court may extend the commitment of a subject individual for up to one year upon proof of the same three elements required for an initial commitment: that the individual is mentally ill, a proper subject for treatment, and dangerous under one of the five standards of WIS. STAT. § 51.20(1)(a)2.a.-e. *S.H.*, 393 Wis. 2d 511, ¶8. Given that an individual receiving treatment might not have committed recent acts demonstrating dangerousness if treatment has been effective in ameliorating such behavior, the legislature enacted § 51.20(1)(am), which provides an "alternative evidentiary path" for proving dangerousness. *S.H.*, 393 Wis. 2d 511, ¶¶8-9 (quoting *Portage County v. J.W.K.*, 2019 WI 54, ¶19, 386 Wis. 2d 672, 927 N.W.2d 509). Under this provision, the dangerousness element may be established in recommitment proceedings "by a showing that there is a substantial likelihood, based on the subject individual's treatment record, that the individual would be a proper subject for commitment if treatment were withdrawn." Sec. 51.20(1)(am). The goal of this legislation is to avoid the "vicious circle of treatment, release, overt [dangerous] act, recommitment" that could occur if proof of a recent dangerous behavior were required for extension of

a commitment. **S.H.**, 393 Wis. 2d 511, ¶9 (quoting **State v. W.R.B.**, 140 Wis. 2d 347, 351, 411 N.W.2d 142 (Ct. App. 1987)).

¶10    "Review of an extension order presents a mixed question of fact and law." **S.H.**, 393 Wis. 2d 511, ¶10 (citing **Waukesha County v. J.W.J.**, 2017 WI 57, ¶15, 375 Wis. 2d 542, 895 N.W.2d 783).  The circuit court's factual findings must be upheld unless they are clearly erroneous, but whether the facts satisfy the statutory standards is a question of law to be reviewed de novo.  **S.H.**, 393 Wis. 2d 511, ¶10.

¶11    In **S.H.**, Winnebago County sought the recommitment via WIS. STAT. § 51.20(1)(am) of an individual who had not exhibited recent dangerous behavior, but who did "not believe she need[ed] medication" and had a history of discontinuing medication when she was not involuntarily committed, which led to dangerous behavior, hospitalization, and further commitment.  393 Wis. 2d 511, ¶¶15-16.  Although she had been compliant and stable for at least two years prior to the petition for the recommitment in question, the subject individual's psychiatrist testified to a "very high likelihood" that she would stop taking medication without a commitment order and that, in his opinion, "medication is what [was] preventing her from decompensating" and engaging in the dangerous behavior (induced by paranoia) in which she engaged in the past.  **Id.**, ¶¶4-6.  This testimony sufficiently "connected the dots" between previous dangerous acts and the subject individual's current situation to satisfy the "dangerousness" requirement for recommitment.  **Id.**, ¶¶15-16.

¶12    Thus, Paul is mistaken in asserting that events that occurred long before the recommitment hearing are per se insufficient to prove current dangerousness.  On the contrary, "[d]angerousness in an extension proceeding can

and often must be based on the individual's precommitment behavior, coupled with an expert's informed opinions and predictions." *S.H.*, 393 Wis. 2d 511, ¶13. In this case, the circuit court's factual finding that Paul would still be dangerous to others if he discontinued his medication is not clearly erroneous. Bjerregaard's expert testimony predicting such dangerousness is supported by the history of dangerous behavior in Paul's treatment record (including breaking his brother's ankle[6] and threatening his mother), Paul's apparent failure to presently appreciate or have insight into his mental illness, and the high likelihood that Paul would stop taking medication and getting treatment if his commitment were discontinued. Bjerregaard's explanation of the connection between Paul's history and predicted dangerousness in the event medication is discontinued supports the circuit court's determination that Paul "would be a proper subject for commitment if treatment were withdrawn." *See* WIS. STAT. § 51.20(1)(am).

¶13 In addition to *S.H.*, Paul cites *Burnett County v. B.S.*, No. 2023AP1811-FT, unpublished slip op. (WI App Feb. 28, 2024) and *Winnebago County v. L.F.-G.*, No. 2019AP2010, unpublished slip op. (WI App May 20, 2020). Both are unpublished opinions[7] in which the appellate court found insufficient evidence for recommitment. Both, however, relate to situations very different from Paul's. In *B.S.*, there was no connection established between the subject individual's "continued … psychotic thinking" and any dangerousness,

---

[6] Paul writes that "no evidence was presented whether [he] was the aggressor or if the incident was an accident." In fact, the court's finding that "[Paul] had broken his brother's foot," which it deemed relevant to the question of Paul's dangerousness, is supported by Bjerregaard's testimony that Paul "breaking his brother's ankle" was part of his history of dangerous behavior. It cannot be overturned as clearly erroneous without any evidence to the contrary.

[7] Paul correctly acknowledges that these cases are not precedential but can be cited for persuasive value. *See* WIS. STAT. RULE 809.23(3)(b).

No. 2023AP1811-FT, ¶¶21-23, perhaps because the examining physician was ill and unable to testify at the recommitment hearing, *id.*, ¶¶5, 25. Burnett County's only witness established that the individual suffered from a mental illness, but she "did not testify regarding the symptoms [the individual] would experience if his medication were stopped" and in fact said that "a court order for involuntary medication was not necessary and that the facility planned to 'wean' [him] off of his medication," to which the individual did not respond very well. *Id.*, ¶¶6, 21. The circuit court had no factual basis from which it could conclude that the individual (B.S.) would be dangerous if commitment were discontinued, and the appellate court noted that absent such evidence, it would be impermissible to rely on assumptions stemming simply from the fact that the individual had been committed in the past. *Id.*, ¶23.

¶14 Similarly, in *L.F.-G.*, Winnebago County's expert testified only that when the subject individual "was off commitment, she stopped her treatment and became acutely psychotic again" and that the individual did "not believe she need[ed] treatment." No. 2019AP2010, ¶7. Unlike in Paul's case, there was no testimony regarding the likelihood of future dangerousness if treatment were withdrawn. *See id.* Thus, this court is not persuaded by these unpublished cases that the circuit court erred in ordering Paul's recommitment.

¶15 Finally, Paul's only argument with respect to his involuntary medication order is that the underlying commitment order is invalid. *See* WIS. STAT. § 51.61(1)(g)3. (an involuntary medication order can only exist with a valid commitment order). Since this court rejects that argument, as explained above, both orders on appeal are affirmed.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.