**COURT OF APPEALS
DECISION
DATED AND FILED**

**November 4, 2025**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP645**

Cir. Ct. No. **2009ME58**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

---

IN THE MATTER OF THE MENTAL COMMITMENT OF S. K.:

TREMPEALEAU COUNTY,

    PETITIONER-RESPONDENT,

  V.

S. K.,

    RESPONDENT-APPELLANT.

---

APPEAL from orders of the circuit court for Trempealeau County: RAMONA A. GONZALEZ, Judge. *Reversed*.

¶1 GILL, J.[1] Sharon[2] appeals orders extending her involuntary commitment pursuant to WIS. STAT. § 51.20 and allowing for the involuntary

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

administration of medication and treatment pursuant to WIS. STAT. § 51.61(1)(g). Sharon argues that Trempealeau County failed to prove that she is dangerous under § 51.20(1)(a)2.c. and (1)(am). We agree that the County failed to present sufficient evidence of Sharon's dangerousness to extend her involuntary commitment and we reverse the orders.

## BACKGROUND

¶2 Sharon was emergently detained in 2009 after she ran in front of a moving vehicle and was nearly struck by it. After a final hearing, the circuit court found that Sharon was mentally ill, dangerous under WIS. STAT. § 51.20, and a proper subject for treatment. The court entered orders for Sharon's involuntary commitment and for her involuntary medication and treatment.

¶3 Since that time, the County has annually petitioned to extend Sharon's involuntary commitment and for her involuntary medication and treatment, and the circuit court has granted each petition. A hearing on the most recent petition took place in November 2024 and is the subject of Sharon's current appeal.

¶4 At the hearing, Dr. Jeffrey Marcus testified that he is a board-certified psychiatrist and that he examined Sharon in October 2024 via videoconference. Marcus opined that Sharon suffers from a treatable mental illness in the form of schizophrenia. Marcus stated that Sharon displayed some minor "residual" symptoms of schizophrenia and explained that she is "well-

---

[2] For ease of reading, we refer to the appellant in this confidential matter using a pseudonym, rather than her initials.

treated" on her current medication. Marcus explained that when Sharon is "acutely symptomatic," she exhibits more florid symptoms, such as hallucinations, delusions, thought disorganization, and erratic behavior. Moreover, Marcus stated that these symptoms have caused a potential safety risk to Sharon in the past. Marcus clarified that the past safety risk he was referring to was the 2009 instance of Sharon running in front of a moving vehicle.

¶5     Marcus further testified that Sharon does not recognize that she has a mental illness and does not believe that she needs to take her medication. Marcus explained that Sharon's failure to recognize the fact that she has a mental illness is the "primary reason" why an extension of Sharon's involuntary commitment is necessary. Marcus expressed concern that if Sharon's involuntary commitment were not extended, she would stop taking her medication. Marcus further stated that there would be "substantial risks" if Sharon stopped taking her medication, including a "decompensation of psychosis and with that an increased risk of dangerousness." Marcus opined that it was "highly unlikely" that Sharon would take her medication voluntarily if her involuntary commitment were not extended. He stated that he discussed "the advantages, disadvantages, and alternatives to" medication with Sharon, but he opined that she was not capable of applying an understanding of the advantages, disadvantages, and alternatives to medication due to her belief that she does not have a mental illness.

¶6     Marcus's report was received into evidence over Sharon's hearsay objection regarding the events leading up to Sharon's 2009 involuntary commitment. In his report, Marcus notes that Sharon "has a history of experiencing severe psychotic decompensation which has been relatively slow to respond to treatment." Marcus further explained that Sharon "would be at very high risk of psychotic and functional decompensation if she were to withdraw

from her antipsychotic treatment." Marcus also noted that if Sharon's treatment were withdrawn, there was a "high likelihood" of the "emergence of grossly unsafe behavior." The report does not specify what those "unsafe behaviors" could potentially be.

¶7      DeeAnn Anderson, Sharon's former case manager, testified that one of the "common themes" of Sharon's history is her belief that she does not have a mental illness and does not need psychotropic medication. Anderson further stated that Sharon told her that she would not voluntarily take her psychotropic medication. Anderson also explained that Sharon's dangerousness stems from her impaired judgment and her belief that her children are in "grave danger."

¶8      Jamie Kurth, a social worker for the County who had worked with Sharon for approximately one and one-half years, testified that she did not believe that Sharon would voluntarily continue to take her medication if she were not ordered to do so. Kurth testified that Sharon informed her that she would not voluntarily take her medication as recently as three to four weeks before the final hearing. Kurth also opined that if Sharon were not involuntarily committed, Sharon would engage in behavior that could necessitate another commitment.

¶9      Lisa Hass testified that she worked with Sharon in her capacity as a community support program nurse and that Sharon had expressed "a lack of knowledge about the benefits of her medication."

¶10      Following the testimonial phase of the hearing, the circuit court made the following findings:

> [A]lthough I do not have any current indications … that
> [Sharon] is a danger to herself, it is the fact of her denial of
> her mental health and her denial of her need for
> medications that give me what I believe is a firm footing on

4

> the third standard that she is really unable to fully comprehend what is at stake here and that if this commitment was not granted that she would be in need of another commitment.…
>
> ….
>
> The [c]ourt is satisfied that she does meet the standard for a recommitment and that at this time she is unable to make a determination with regard to medications. Based upon the testimony of the doctor and the other witnesses, [the court finds] that she does suffer from … a mental illness … and that she is substantially incapable of applying and understanding of the advantages and disadvantages and alternatives to her condition to make informed choices with regard to accepting or refusing psychotropic medications.

The court then entered an order extending Sharon's involuntary commitment for twelve months on an outpatient basis and an order for involuntary medication and treatment during the period of her commitment. Sharon now appeals.

## DISCUSSION

¶11 Sharon argues that the County presented insufficient evidence for the circuit court to conclude that she is dangerous under WIS. STAT. § 51.20(1)(a)2.c. in conjunction with § 51.20(1)(am). Whether the County has met its burden of proof to support the extension of Sharon's commitment presents a mixed question of law and fact. *See Waukesha County v. J.W.J.*, 2017 WI 57, ¶15, 375 Wis. 2d 542, 895 N.W.2d 783. "We uphold a circuit court's findings of fact unless they are clearly erroneous. Whether the facts satisfy the statutory standard is a question of law that we review de novo." *Id.* (citation omitted).

¶12 For a person to be subject to a WIS. STAT. ch. 51 involuntary commitment, the petitioner must prove by clear and convincing evidence that the

subject individual is (1) mentally ill, (2) a proper subject for treatment, and (3) dangerous to himself or herself or to others.[3] ***Langlade County v. D.J.W.***, 2020 WI 41, ¶29, 391 Wis. 2d 231, 942 N.W.2d 277. WISCONSIN STAT. § 51.20(1)(a)2. provides five different means of proving that a subject is dangerous. ***D.J.W.***, 391 Wis. 2d 231, ¶30. "The dangerousness standard is not more or less onerous during an extension proceeding"; "[e]ach extension hearing requires proof of *current* dangerousness." ***Portage County v. J.W.K.***, 2019 WI 54, ¶24, 386 Wis. 2d 672, 927 N.W.2d 509. However, "[b]ecause an individual's behavior might change while receiving treatment, … § 51.20(1)(am) provides a different avenue for proving dangerousness if the individual has been the subject of treatment for mental illness immediately prior to commencement of the extension proceedings." ***Id.***, ¶19.

¶13 Sharon was found dangerous under WIS. STAT. § 51.20(1)(a)2.c. and (1)(am). Section 51.20(1)(a)2.c. provides that a subject individual is dangerous if he or she "[e]vidences such impaired judgment, manifested by evidence of a pattern of recent acts or omissions, that there is a substantial probability of physical impairment or injury to himself or herself or other individuals." As relevant here, § 51.20(1)(am) provides:

> If the individual has been the subject of inpatient treatment for mental illness … immediately prior to commencement of the proceedings as a result of … a commitment or protective placement ordered by a court under this section … the requirement[] of a … pattern of recent acts or omissions under par. (a)2.c. … may be satisfied by a showing that there is a substantial likelihood, based on the subject individual's treatment record, that the individual

---

[3] Sharon does not contest that she is mentally ill or that she is a proper subject for treatment.

would be a proper subject for commitment if treatment were withdrawn.

¶14     Sharon contends that the testimony of the County's witnesses was insufficient to prove that it was "much more likely than not" that she would physically harm herself or others if treatment were withdrawn. *See Marathon County v. D.K.*, 2020 WI 8, ¶35, 390 Wis. 2d 50, 937 N.W.2d 901 (explaining that "substantial probability" means "much more likely than not"). Specifically, Sharon contends that "[t]he only evidence presented that [she] has ever been dangerous was from 2009, when [she] walked in front of traffic."

¶15     We conclude that, while the County presented evidence that Sharon would stop taking her medication if she were not involuntarily committed, the County failed to present clear and convincing evidence to support the finding of Sharon's dangerousness under WIS. STAT. § 51.20(1)(a)2.c. in conjunction with § 51.20(1)(am). While Dr. Marcus stated that there was a substantial risk of Sharon decompensating if she were unmedicated, and that this decompensation would come with an "increased risk of dangerousness" in the form of her potentially engaging "in behaviors where she lacked awareness of the risk where she could put herself in danger," Marcus did not explain the types of dangers that Sharon would face, or provide any examples of ways in which it is likely Sharon would be dangerous to herself or others if she was no longer involuntarily committed.

¶16     The County did not present any evidence of the types of dangers that would arise with Sharon's decompensation. For example, there was no evidence that, if she were not involuntarily committed, Sharon would hurt herself, fail to eat food or drink water, lose her home, or be unable to care for herself. Further, no evidence was presented as to how Sharon would likely be a danger to others if she

was not involuntarily committed. Conclusory evidence—such as merely stating that an individual would be "dangerous," without evidence explaining the ways in which the individual would be dangerous—is insufficient to support an involuntary commitment under WIS. STAT. ch. 51. *See **D.J.W.***, 391 Wis. 2d 231, ¶40 (requiring specific factual findings regarding a subject individual's dangerousness); ***Winnebago County v. S.H.***, 2020 WI App 46, ¶13, 393 Wis. 2d 511, 947 N.W.2d 761 (stating that a lack of evidence supporting an expert's legal conclusion will render the expert's testimony insufficient).

¶17 Sharon does not raise any independent arguments regarding the involuntary medication order. We note, however, that there cannot be an involuntary medication order without an underlying involuntary commitment. *See* WIS. STAT. § 51.61(1)(g). Thus, because we reverse the order for Sharon's involuntary commitment, we also reverse the order for her involuntary medication and treatment.

*By the Court.*—Orders reversed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.